No. 26-1878

---

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

JARED DEMARINIS,

*Defendant-Appellee*,

COMMON CAUSE, et al.,
*Defendants-Intervenors-Appellees*

---

On Appeal from the United States District Court
for the District of Maryland
Case No. 1:25-cv-3934-SAG

---

**OPPOSITION TO UNITED STATES'
EMERGENCY MOTION TO EXPEDITE BRIEFING OF DEFENDANTS-
INTERVENORS-APPELLEES COMMON CAUSE, OUT FOR JUSTICE,
INC., CARL SNOWDEN, MYRIAM PAUL, AND LUIS SIMS**

---

1

## INTRODUCTION

Appellant, the United States of America, has not established good cause to justify expediting this appeal. *See* U.S.'s Opposed Motion to Expedite Briefing ("Mot."), 4th Cir. Dkt. No. 6. Appellant makes almost no effort to argue that expedited briefing will save it, or the broader public, from any harm. Instead, it makes threadbare arguments about election security and suggests that Maryland should conduct list maintenance ahead of this year's upcoming elections, an issue that this appeal will not address. Indeed, this case does not implicate *any* questions that demand resolution ahead of the November 2026 elections. Rather, this appeal will determine only whether to revive Appellant's effort to obtain unredacted data for a fishing expedition into Maryland's voter list—a decision that has no effect on list maintenance in Maryland. The district court—just as all 18 federal courts that have issued merits rulings in Appellant's materially identical lawsuits around the country have done—dismissed Appellant's complaint. Even if this Court reversed this dismissal, multiple issues would remain to be addressed by the district court on remand.

Further, Appellant's supposed need for expedition is undermined by its striking lack of urgency in the lead-up to and throughout this litigation. Courts routinely reject claims of emergency when they are inconsistent with a party's actions in the case. Appellant *waited more than three months* after Maryland

2

responded to its request before filing suit. *See* Dist. Ct. Dkt. No. 1. Once Appellant did finally file the case, it delayed more than a month in filing its summons returned executed for all Defendants, *see* Dist. Ct. Dkt. No. 28, and more than a month-and-a-half to file its certificate of service for its motion to compel, *see* Dist. Ct. Dkt. No. 31. And when the district court dismissed Appellant's case, Appellant waited nearly three weeks to file a notice of appeal, Dist. Ct. Dkt. No. 91, 94, and another eight days after that to file its motion to expedite, *see* Mot. In other words, Appellant has not sought to bring or prosecute its claims expeditiously, yet it now seeks to burden the Court and the parties because its own delay has shortened the window before this year's elections. This is not good cause.

Finally, Appellant's proposed briefing schedule cannot even provide it the relief it seeks. Appellant proposes an argument date that would occur less than two months before the November 3, 2026 general election, and *after* or concurrent to several critical deadlines ahead of that election. Even if this Court moved heaven and earth for Appellant, there is no realistic way Appellant would be able to obtain any list maintenance changes in Maryland ahead of the election—in large part because Appellant does not and cannot request any list maintenance as part of its relief in this case. In other words, even if Appellant's motion had merit—which it does not—the expedited briefing schedule Appellant seeks would still not remedy the imaginary problem it posits.

For all these reasons, this Court should deny Appellant's motion to expedite briefing.

## BACKGROUND

Beginning in May 2025, Plaintiff-Appellant the United States, through the U.S. Department of Justice ("DOJ"), began sending letters to election officials in at least 40 states, making escalating demands to produce voter registration databases, with plans to gather data from all 50 states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated July 14, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information. Appellant has now sued 30 states and Washington D.C. in courts across the country, demanding access to sensitive state-held unredacted voter data without explaining its intended use of this data. *See id.* Maryland is one of those states, and this appeal comes from one of these 31 similar suits the United States has filed.

On July 14, 2025, DOJ sent a letter to Appellee DeMarinis, Maryland's State Administrator of Elections, demanding, among other things, "[t]he current electronic copy of Maryland's computerized statewide voter registration list." *See* Letter of Michael E. Gates to the Hon. Jared DeMarinis (July 14, 2025), Dist. Ct. Dkt. No. 2-2, ("July 18 Letter"), at 2–5. Appellee DeMarinis responded on July 30, 2025, setting

4

out the process under Maryland law for procuring the statewide voter registration list and referring DOJ to the state's website for doing so. *See* Letter of the Hon. Jared DeMarinis to Maureen Riordan and Michael E. Gates (July 30, 2025), Dist. Ct. Dkt. No. 2-2, ("July 30 Letter"), at 7–11. On August 13, 2025—in response to a request for Maryland's voter registration list from the DOJ—Appellee DeMarinis requested that DOJ "share the Department's purpose in creating [a system] of records" of Maryland voters and explain why the "public voter registration list requested is necessary and relevant to that purpose," as required under federal law. *See* Letter of the Hon. Jared DeMarinis to Maureen Riordan and Michael E. Gates (Aug. 13, 2025), Dist. Ct. Dkt. No. 2-2, ("August 13 Letter"), at 13–14. Appellee DeMarinis also cited his obligation under state law to ensure that the voter registration list not be used for "commercial solicitation" or "any other purpose not related to the electoral process," such that the Secretary needed to know "what [DOJ] intend[s] to do with Maryland's voter registration list" before turning over the list or else risk violating state law. *Id.* at 13 (citing Md. Code Ann., Elec. Law § 3-506(a)(1)).

On August 18, 2025, DOJ responded to Appellee DeMarinis, demanding that Maryland provide to the DOJ its complete, non-public voter database. *See* Letter of Harmeet K. Dhillon to the Hon. Jared DeMarinis (Aug. 18, 2025), Dist. Ct. Dkt. No. 2-2 ("August 18 Letter"), at 16–18. DOJ specifically requested private voter information, including registrants' full name, date of birth, address, driver's license

number, and the last four digits of the registrant's social security number. *Id.* at 16. DOJ did not provide any response to Appellee DeMarinis' direct questions about what specifically DOJ intended to do with the voter data.

Appellee DeMarinis responded on August 25, 2025. *See* Letter of the Hon. Jared DeMarinis to Harmeet K. Dhillon and Maureen Riordan (Aug. 25, 2025), Dist. Ct. Dkt. No. 2-2, at 20–22.  He declined to provide the unredacted list, noting that DOJ did not respond to the questions posed about its purpose for procuring a list of Maryland's voters and why the list was necessary and relevant for that purpose. *Id.* Appellee DeMarinis stated in his letter that "[b]y evading [Maryland's] questions and failing to provide answers, DOJ is undermining its own requests" for the voter file. *Id.* at 20.

DOJ did not act for 98 days—more than three months. On December 1, 2025, DOJ filed a lawsuit in the District of Maryland, seeking to compel Maryland to turn over the unredacted voter file. Dist. Ct. Dkt. No. 1. DOJ did not file its summons returned executed for all Defendants until more than a month later on January 5, 2025, *see* Dist. Ct. Dkt. No. 28, and only filed a certificate of service for its motion to compel on January 20, 2026, Dist. Ct. Dkt. No. 31.

On June 18, 2026, the district court issued an opinion and order granting dismissal of DOJ's suit, holding that the unredacted voter file "is not a record or paper that a state must produce to the United States under the [Civil Rights Act of

6

1960 (CRA)].” *United States v. DeMarinis*, No. SAG-25-3934, 2026 WL 1780586, at *5 (D. Md. June 18, 2026).

To date, 17 federal district courts and one federal appellate court have dismissed the United States's improper attempts to seize statewide voter files—with none going the other way. *See United States v. Adams*, No. 3:26-cv-00019-CHB-EBA, 2026 WL 2123871 (E.D. Ky. July 23, 2026); *United States v. Thomas*, No. 3:26-CV-21 (KAD), 2026 WL 2070437 (D. Ct. July 17, 2026); *United States v. Oliver*, No. 1:25-cv-01193-JCH-JFR, 2026 WL 2031479 (D.N.M. July 14, 2026); *United States v. Koski*, No. 3:26-cv-42 (RCY), 2026 WL 2032532 (E.D. Va. July 14, 2026); *United States v. Warner*, No. 2:26-cv-156, 2026 WL 2018877 (S.D.W.V. July 13, 2026); *United States v. Bd. of Elections of the State of N.Y.*, No. 1:25-CV-1338-MAD/PJE, 2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. Scanlan*, No. 25-cv-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026); *United States v. Schmidt*, No. 2:25-cv-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026); *United States v. Benson*, No. 26-1225, 2026 WL 1815425 (6th Cir. June 24, 2026); *United States v. DeMarinis*, No. SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026); *United States v. Wis. Elections Comm'n*, No. 25-cv-1036-jdp, 2026 WL 1430354 (W.D. Wis. May 21, 2026); *United States v. Bellows*, No. 1:25-cv-468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026); *United States v. Fontes*, No. CV-26-66-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *United States v.*

7

*Amore*, No. 25-CV-639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Galvin*, No. 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026).

The district court entered judgment in the case on June 18, 2026. Dist. Ct. Dkt. No. 92. DOJ filed a notice of appeal 19 days later on July 6, 2026. Dist. Ct. Dkt. No. 94. DOJ waited another eight days after that to file its motion to expedite. *See* Mot.

## LEGAL STANDARD

Under federal law, "each court of the United States shall determine the order in which civil actions are heard and determined, except that the court shall expedite the consideration of any action . . . if good cause therefor is shown." 28 U.S.C. § 1657(a). The statute further specifies that "'good cause' is shown if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit." *Id.* Similarly, the Appellate Procedure Guide for the Fourth Circuit dictates that the Court has discretion to grant a motion to expedite, which must "state clearly the reasons supporting expedition, the ability of the parties to present the appeal on the existing record, and the need for oral argument." 4th Cir. App. Proc. Guide, *Specific Motions* (Mar. 2026)

8

https://www.ca4.uscourts.gov/appellateprocedureguide/Motions/APG-specificmotions.html.

## ARGUMENT

### I.    The United States Has Not Shown Good Cause.

The United States has failed to show good cause that necessitates expediting the appeal. Appellant makes two arguments, neither of which are availing.

*First*, Appellant's argument that the "appeal presents the important purely legal question of how a court is to adjudicate the United States' demand for" the voter file at issue here, Mot. at 11, has no connection whatsoever to any need for expedition. Appellant's argument here, *see id*. at 11–14, amounts to nothing more than a premature and unauthorized attempt at an opening merits brief, explaining the ways that the district court purportedly "erred" in reaching the unremarkable and identical conclusion that all other federal courts have also reached: DOJ's claims are meritless and should be dismissed. Appellant does not provide any argument—let alone legal authority—about why an "important purely legal question" merits expedited review. *Id.* at 11. In fact, it seems more plausible that absent the prospect of irreparable injury or some other harm—which Appellant does not identify—courts should not adopt hurried or emergency procedures in deciding particularly important legal questions. *See generally Trump v. CASA, Inc.*, 606 U.S. 831, 855 (2025) (warning against deciding "highly consequential cases . . . in a fast and

9

furious process of rushed, high-stakes, and low-information decisionmaking") (citation modified).

*Second*, Appellant's suggestion that "an expedited appeal will allow the United States to confirm that Maryland's voter rolls are composed solely" of eligible voters, Mot. at 14, is factually inaccurate and entirely speculative. The only relief that Appellant seeks in this case is for Maryland to turn over its unredacted voter file. *See* Dist. Ct. Dkt. No. 1 ¶ 30(B); Dist. Ct. Dkt. No. 2 at 2–3. The only question in this case is whether DOJ can compel the production of unredacted voter data that is protected by law. Resolving *that* question does not have any impact on Maryland's routine and coexisting obligations to maintain accurate voter rolls, nor is it tied to any election. Thus, contrary to the United States' suggestion, this appeal is not temporally related to ongoing pre-election events that would necessitate expedited proceedings.

While it appears that the United States wants to use the data it collects to raise unsupported questions about Maryland's voter roll maintenance program, those are not time-sensitive concerns. Unlike in election law cases requiring expedition, a free and fair election for Maryland's voters in 2026 can proceed without accelerating the resolution of United States' appeal, as it has thus far through this year's primary process.

10

The United States argues that before the 2026 elections "Maryland voters need to know that the election is secure and that non-citizens, deceased, former residents, non-residents, and voters with multiple records are not registered to vote in that election." Mot. at 4. It is entirely speculative that DOJ's acquisition of Maryland's voter data will contribute to state residents' collective knowledge about the security and accuracy of federal elections. In fact, the data the United States seeks cannot prove or disprove the accuracy of Maryland's state voter roll. The United States seeks a static voter list, whereas Maryland's voter list is constantly evolving, and neither impact the outcome of elections, which are determined by actual voters, not potentially erroneously listed registrants. *See, e.g.*, July 30 Letter at 7–11 (Appellee DeMarinis explaining to DOJ how list maintenance is an iterative and dynamic process requiring the frequent and regular exchange of updated data); Dist. Ct. Dkt. 43 at 15; Dist. Ct. Dkt. No. 60 at 7; *see also, e.g.*, *United States v. Fontes*, No. 2:26-cv-66-SMB, Dkt. No. 8-4 at 5 (Arizona Secretary of State informing DOJ that the statewide voter file "alone does not provide evidence regarding Arizona's compliance with" federal law and instead "merely captures a snapshot in time and provides little information about list maintenance activities.").

And despite Appellant's fact-free innuendo, it does not allege—let alone provide any actual proof of—any supposed "ineligible voters remaining on [Maryland's] voter rolls." Mot. at 15. Appellant has provided no proof for its

suggestion that "many" absentee ballots will be going to "potentially registered ineligible voters, fraudulent registrants, or individuals who should not have been registered." *Id*. at 3–4. In fact, Appellant has repeatedly emphasized that this action is designed "to facilitate *pre-suit investigation*," Dist. Ct. Dkt. No. 56 at 7 (emphasis added), when "no factual allegations of a substantive violation of federal law are required," *id*. at 6. Only now that it suits them, Appellant insists that calamity will strike unless this Court gives it what it wants.

Both of Appellant's arguments for good cause for expedition are meritless, and this Court should deny its motion accordingly. *See generally* Order, *United States v. Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 23, 2026) (Seventh Circuit denying motion to expedite in DOJ appeal of Wisconsin case). Order, *United States v. Amore*, No. 26-1665 (1st Cir. July 6, 2026) (First Circuit denying motion to expedite in DOJ appeal of Rhode Island case).

## II.    The United States' Delay in This Case Further Prevents Any Finding of Good Cause.

Further, the United States' own delay in initiating and litigating this case belies its own argument for supposed "good cause." While there is limited case law evaluating 28 U.S.C. § 1657(a), courts evaluating legal tests involving analogous standards have held that "[g]ood cause cannot arise as a result of the [party's] own delay." *Nat'l Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95,

12

114 (2d Cir. 2018); *see also Env't Def. Fund, Inc. v. E.P.A.*, 716 F.2d 915, 921 (D.C. Cir. 1983) ("the good cause exception does not apply when an alleged 'emergency' arises as the result of [a party's] own delay"). Further, courts often deny relief in elections cases where "a plaintiff has unreasonably delayed bringing his claim." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016).

Here, even if Appellant actually needed relief before the upcoming elections—which it does not—it has only itself to blame. DOJ's correspondence with Maryland went on longer than necessary because, in its August 18 Letter, DOJ failed to respond to Appellee DeMarinis's questions in his August 13 Letter—namely, DOJ's intended purpose for the data, which he informed DOJ was necessary for Maryland to comply with state law. After Maryland responded on August 25, 2025, DOJ *waited more than three months* to file suit. This delay was utterly unnecessary. As of December 1, 2025—the date that DOJ filed suit—DOJ had already brought several of its cookie-cutter lawsuits demanding access to states' unredacted voter files. *See, e.g.*, *Bellows*, No. 25-cv-468, Dkt. No. 1 (D. Me. Sept. 16, 2025); *Weber*, No. 25-cv-9149, Dkt. No. 1 (S.D. Cal. Sept. 25, 2025); *Simon*, No. 25-cv-3761, Dkt. No. 1 (D. Minn. Sept. 25, 2025). There is no novelty or surprise to DOJ's claim here. This more-than three-month delay alone is grounds to deny Appellant's motion. *See generally Washington v. Trump*, No. 2:25-CV-00244-LK, 2025 WL 3144950, at *4 (W.D. Wash. Nov. 10, 2025) (federal government defendants' "long delays in taking

13

action here suggest that they . . . will not suffer irreparable harm"); *Grundmann v. Trump*, 786 F. Supp. 3d 188, 193 (D.D.C. 2025) (same).

Further, even after delaying so long in filing this case, Appellant still did not move with any urgency to litigate it. Appellant filed its summons returned executed for all Defendants more than a month after it filed its complaint, Dist. Ct. Dkt. No. 28, and waited 50 days to file a certificate of service for its motion to compel, Dist. Ct. Dkt. No. 31. After entry of judgment in this case, DOJ waited nearly three full weeks to file a notice of appeal. Dist. Ct. Dkt. No. 91. The district court's dismissal order could not possibly have snuck up on Appellant, given that it was preceded by eight dismissals in DOJ's other cases seeking states' unredacted voter files. *See supra*. Nor can DOJ claim it needed to study whether the issue was worthy of appeal, given that it had already appealed several of those adverse orders in other cases. And DOJ then waited eight more days following its notice of appeal to file this motion to expedite, which is materially indistinguishable from other such motions to expedite they had previously filed in other cases. *See* Mot.

If this case were so urgent, DOJ should have treated it with urgency at each point in the past year. It cannot ask this Court to bear the burden of its own delinquency to engineer good cause.

14

### III.   The Proposed Briefing Schedule Cannot Realistically Provide Appellant Any Relief.

Appellant's motion to expedite is predicated on the idea that relief is needed ahead of Maryland's "rapidly approaching" November 3, 2026 general election. Mot. at 3. But its motion cannot actually help there. Appellant requests argument at some point during the sitting of September 15-18, 2026.[1] Mot. at 5. Any such hearing would occur *after* key deadlines for the November 2026 election—including the deadline for the Maryland State Board of Elections ("SBE") to certify the general election ballot (August 31, 2026) and the day on which SBE may begin printing ballots (September 3, 2026). *See* Ex. 1, Maryland State Board of Elections 2026 Gubernatorial Election Calendar, 7 (Feb. 24, 2026). It is mere days before other critical deadlines, such as the deadline for transmitting mail-in ballots to certain voters. *See id.* (September 19, 2026 deadline for certain overseas voters and September 21, 2026 deadline to certain domestic voters). And it is less than a month before the voter registration deadline for the November 2026 election. *See id.* (October 13, 2026 deadline).[2]

---

[1] It appears as though the Fourth Circuit has already set its argument calendar for the September sitting, which further complicates Appellant's motion. *See* U.S. Court of Appeals for the Fourth Circuit, *Oral Argument Calendar, Sept. 15 –18, 2026 Session*, https://www.ca4.uscourts.gov/cal/internetcalSept152026.pdf.

[2] Appellant's proposed schedule is no longer even possible, *see* Mot. at 4, given that Appellant requested that its opening brief be due on July 24, 2026—four days *after* the filing date of this response. As such, realistically speaking, any expedited

Even if this Court were somehow able to hold argument and issue a ruling overturning the district court's decision almost instantaneously, that judgment would only—at best—grant DOJ access to Maryland's unredacted voter file.[3] *See* Dist. Ct. Dkt. No. 1 ¶ 30(B); Dist. Ct. Dkt. No. 2 at 2–3. Such a decision could not itself require any list maintenance in advance of the November 3, 2026 election because DOJ does not seek that relief in this case. *See supra* Argument Section I. Upon receiving a favorable ruling, Appellant would still need to receive the unredacted list, review it in detail, conduct thorough analyses to detect some sort of violation of federal law, and then institute some sort of proceeding—the contours of which are completely speculative, infeasible, and unspecified by DOJ—to begin to try to investigate and potentially remove purportedly ineligible voters ahead of a federal election. All of this is doubly impossible given that registered voters must be given adequate notice and time to respond under federal law and have particular protections against removal so close to a federal election. *See* 52 U.S.C. § 20507. Simply put, there is no realistic pathway for DOJ to remedy its (nonexistent) problem

---

briefing schedule and hearing would have to occur later than Appellant has requested, which renders its request for relief ahead of the November 2026 elections even less practical.

[3] Of course, this Court could also simply reverse and remand to the district court, in which case DOJ would not even receive Maryland's unredacted voter list at that time.

even if it received the schedule it seeks and obtained an almost immediate favorable ruling.

## CONCLUSION

For the foregoing reasons, this Court should deny Appellant's motion to expedite briefing in this appeal.

Dated: July 28, 2026

Respectfully submitted,

/s/ Jonathan Topaz
Jonathan Topaz
Theresa J. Lee
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

Deborah A. Jeon
Dara Johnson
AMERICAN CIVIL LIBERTIES
UNION OF MARYLAND
3600 Clipper Mill Road
Suite 200
Baltimore, MD 21211
Tel. 410-889-8555
jeon@aclu-md.org
djohnson@aclu-md.org

*Attorneys for Defendants-Intervenors-Appellees Common Cause, Out for Justice, Inc., Carl Snowden, Myriam Paul, and Luis Sims*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 3,714 words. This brief further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman Font.

Dated: July 28, 2026                                    Respectfully submitted,

                                                         /s/ *Jonathan Topaz*
                                                         Jonathan Topaz

                                                         *Attorney for Defendants-Intervenors-Appellees Common Cause, Out for Justice, Inc., Carl Snowden, Myriam Paul, and Luis Sims*