No. 26-1878

_____

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

_____

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellant,*

**v.**

**JARED DEMARINIS,**

*Defendant-Appellee.*

_____

On Appeal from the United States District Court for the District of Maryland
(Stephanie A. Gallagher, District Judge)

_____

## RESPONSE OF DEFENDANT JARED DEMARINIS TO APPELLANT'S EMERGENCY MOTION TO EXPEDITE

_____

ANTHONY G. BROWN
Attorney General of Maryland

JEFFREY S. LUOMA
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
jluoma@oag.maryland.gov
(410) 576-6441
(410) 576-6955 (facsimile)

July 28, 2026

Attorneys for Defendant

In this case, plaintiff the United States of America demands that defendant Jared DeMarinis, Maryland State Administrator of Elections, be judicially compelled without process to produce an unredacted, electronic copy of Maryland's voter registration database. The complaint alleges that Title III of the Civil Rights Act of 1960, codified at 52 U.S.C. §§ 20701–20706 ("Title III"), grants the United States Attorney General authority to obtain the unredacted database because it is an "election record" within the meaning of 52 U.S.C. § 20701. And the United States contends that a voter registration database may be demanded under the civil rights-era law to review state compliance with the National Voter Registration Act of 1993 (NVRA) and the Help America Vote Act of 2002 (HAVA). To date, though, every single court to decide these issues has rejected and dismissed the United States' efforts. *See United States v. Benson*, 179 F.4th 470 (6th Cir. 2026); *United States v. Adams*, No. 3:26-cv-00019, 2026 WL 2123871 (E.D. Ky. July 23, 2026); *United States v. Thomas*, No. 3:26-cv-21, 2026 WL 2070437 (D. Conn. July 17, 2026); *United States v. Oliver*, No. 1:25-CV-01193, 2026 WL 2031479 (D.N.M July 14, 2026); *United States v. Koski*, No. 3:26-cv-42, 2026 WL 2032532 (E.D. Va. July 14, 2026); *United States v. Warner*, No. 2:26-cv-00156, 2026 WL 2018877 (S.D. W. Va. July 13, 2026); *United States v. Board of Elec. of the State of New York*¸ No. 1:25-CV-1338, 2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. Scanlan*, No. 25-cv-371, ___ F. Supp. 3d ___, 2026 WL 1864054 (D.N.H. June 29, 2026); *United States v. Schmidt*, No. 2:23-cv-01481, ___ F. Supp. 3d ___, 2026 WL 1850016 (W.D. Pa. June 27, 2026); *United States v. DeMarinis*, No. 1:25-cv-03934-SAG, 2026 WL 1780586 (D. Md. June 18, 2026); *United States v. Bellows*, No. 1:25-cv-00468, ___ F. Supp. 3d ___, 2026 WL 1430481

(D. Me. May 21, 2026); *United States v. Fontes*, ___ F.Supp.3d ___, No. CV-26-00066, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026); *United States v. Amore*, No. 25-cv-00639, ___ F. Supp. 3d ___, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026).

On July 14, 2025, the United States Department of Justice sent a letter to State Administrator DeMarinis requesting certain information about Maryland's voter registration list maintenance program, and demanding Maryland's statewide voter registration list (SVRL), containing "all fields." On July 30, 2025, State Administrator DeMarinis responded, directing the Department to publicly available voter registration data (redacted of sensitive personal information) on the Maryland State Board of Election's website. On August 18, 2025, the Department replied to the response, reiterating the demand for an unredacted, electronic copy of Maryland's SVRL and for the first time cited Title III as a basis for its demand. On August 25, 2025, State Administrator DeMarinis again responded, citing Maryland law that barred him from divulging voters' sensitive personal information and inquiring into the Department's purpose for requesting such information.

No further communication between the Department and State Administrator DeMarinis took place until December 1, 2025. At that time, more than three months after the State Administrator's August 25th letter, the Department filed a civil complaint naming State Administrator DeMarinis as the sole defendant and seeking a declaration that Title III required disclosure of Maryland's unredacted SVRL. The Department concurrently

2

filed a motion to compel the SVRL, arguing that it was statutorily entitled to relief without any of the adversarial process provided by the Federal Rules of Civil Procedure. The Department did not request a preliminary injunction or otherwise indicate any need for expedient resolution of its filings.

On January 30, 2026, State Administrator DeMarinis filed a motion to dismiss, arguing that Maryland's SVRL was not an "election record" within the meaning of Title III and, if it were, that the Department did not provide a sufficient "basis and purpose" as required by the statute. The State Administrator also filed an opposition to the Department's motion to compel, emphasizing that the overwhelming weight of authority required application of the Federal Rules of Civil Procedure to the proceeding. The United States filed its response on February 13th, and State Administrator DeMarinis filed his reply on February 27th.

The competing motions remained pending before the district court for nearly four months. At no point did the United States communicate any need to expedite the matter. On June 10, 2026, the court held a hearing on the motions; eight days later the court issued a memorandum opinion denying the Department's motion to compel and dismissing its complaint for failure to state a claim. Over two weeks later, on July 6, 2026, the United States filed this appeal.

## STATUTORY BACKGROUND

### Federal Law Governing Elections

Three federal laws governing the administration of elections and voter registration are most pertinent to this case: Title III of the Civil Rights Act of 1960, 52 U.S.C.

3

§§ 20701-20706 ("Title III"); the National Voter Registration Act of 1993, 52 U.S.C. §§ 20501-20511 ("NVRA"); and the Help America Vote Act of 2002, 52 U.S.C. §§ 20901-21145 ("HAVA"). Title III governs the retention of records related to an election. It requires an "officer of election" to "retain and preserve" all "records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. The records must be retained "for a period of twenty-two months from the date" of the federal election to which the records relate. *Id.* And the premature destruction, mutilation, or alteration of such records is a crime punishable by up to a $1,000 fine, one year in prison, or both. *Id*. at § 20702.

The Attorney General of the United States may make a "demand in writing" for records retained under Title III. 52 U.S.C. § 20703. The demand "shall" provide both a "basis" and a "purpose" for the demand. *Id.* Upon a sufficient demand, the records must be available at the "principal office" of the records' custodian for "inspection, reproduction, and copying." *Id.* If a dispute over the demand arises, a United States district court for the district in which the records are held possesses jurisdiction "to compel production" of the records "by appropriate process." *Id.* at § 20705.

The NVRA provides minimum standards for the administration of voter registration. One such standard, pertinent to this case, is the requirement that a state "conduct a general program that makes a reasonable effort" to remove registered voters from a voter registration list when the voter dies or moves out of the registrar's jurisdiction. 52 U.S.C. § 20507(a)(4). A state "may" meet this requirement by using change-of-address

4

information provided by the United States' Postal Service to identify voters who may have moved from the jurisdiction; but, it may only remove such voters by sending them written notice and having them reply to the notice with written confirmation of their move. *Id*. at § 20507(c)(1). If the voter does not respond to the state's notice, they can only be removed from the voter roll if they subsequently fail to vote, or appear to vote, in the jurisdiction for two consecutive general elections for federal office. *Id*. at § 20507(c)(1), (d)(1).

HAVA, among other measures, governs the operational requirements for the administration of voter registration. The law requires a state to maintain its voter registration data in "a single, uniform, official, centralized, interactive computerized statewide voter registration" database that is administered at the state level. 52 U.S.C. § 21083(a)(1)(A). The state must conduct "list maintenance" on its computerized database, removing ineligible voters on a consistent and timely basis. *Id*. at § 21083(a)(2)(A). HAVA does not impose any substantive requirements to remove ineligible voters or conduct systemized removal programs; it only requires that states remove voters from a computerized system in accordance with the standards set by the NVRA. *Id*.

For a violation of the NVRA, both the Attorney General of the United States and an aggrieved member of the public may sue for declaratory and injunctive relief. 52 U.S.C. § 20510(a), (b). For a violation of the voter registration requirements in HAVA, only the Attorney General is authorized to file an enforcement suit. 52 U.S.C. § 21111.

### ARGUMENT

This Court may expedite appeals for "good cause." 28 U.S.C. § 1657. The United States' assertion that "Maryland's voters and election officials need a quick answer"

5

(ECF 6 at 4) to the question of Title III's applicability to a computerized voter registration database is not good cause.  At no point did the United States seek "a quick answer" from the trial court in order to ensure the "security" and "integrity" of either Maryland's primary or general election.  (ECF 6 at 4.)  And the timeline it proposes now will not result in resolution of the issues it presents before the general election begins.

Contrary to the United States' assertion, the outcome of this appeal will not affect Maryland's upcoming general election.  It cannot result in systematic removal of voters because federal law prohibits such removals in the 90 days leading up to an election (a period that begins this election year on August 5, 2026).  *See* 52 U.S.C. § 20507(c)(2)(A) (requiring a State to complete any program conducted to "systematically remove the names of ineligible voters" by the 90th day before election day).  Nor has the United States provided any reason to believe that Maryland's SVRL suffers from "integrity" or "security" issues requiring a pre-election review.  The United States requests expediency to conduct an unnecessary electoral fishing expedition before the general election, rather than after it.

This Court should deny the request.

## I.   THE UNITED STATES DID NOT EXPEDITE MATTERS IN THE DISTRICT COURT.

Until the matter was docketed in this Court, the United States had taken no issue with this case proceeding along the normal and customary timelines provided by the Federal Rules of Civil Procedure and applicable Local Rules.  After State Administrator DeMarinis transmitted his August 25, 2025 reply letter, the United States waited three

months to initiate this case (on December 1, 2025). When it filed its complaint, the United States did not seek immediate injunctive relief, nor did it request any expedient process from the district court. And after serving its summons on the State Administrator on December 17, 2025, the United States consented, without reservation, to extend the time for a responsive pleading from January 7, 2026, to January 30, 2026.

Maryland held its primary election on June 23, 2026. To administer that election in accordance with federal and State law the content of primary election ballots had to be certified by the State Board of Elections on or before April 20, 2026, *see* Md. Code Ann., Elec. Law § 9-207(a)(1); mail-in ballots were transmitted to qualified overseas voters and servicemembers on May 9, 2026, *see* 52 U.S.C. § 20302(a)(8)(A); and to qualified domestic voters on May 11, 2026, *see* Elec. Law § 9-306(c)(1); and early voting began on June 11, 2026, *see* Elec. Law § 10-301.1(c). Yet the United States seemed uninterested in obtaining "a quick answer" prior to any of those deadlines. Indeed, the motion to dismiss was fully briefed on February 27, 2026. But in the nearly 14 weeks between that date and the district court's June 4, 2026 notice scheduling a motions hearing, the United States made no effort to move its case along more quickly.

The United States has also neglected to move its case along in time to reach a resolution before the general election. In addition to the case events detailed above, the United States made no request at the June 10, 2026, motions hearing for an expedient resolution. And it waited over two weeks to appeal the district court's judgment to this Court.

7

Now, in its pending motion to expedite, the United States declares that the general election is "rapidly approaching" and that millions of mail-in ballots will be sent out "[w]eeks before" the November 3rd election day. (ECF 6 at 3.) The United States asserts that "[a]lthough resolution of this appeal will only affect the integrity of the general election, Maryland voters need to know that the election is secure." (ECF 6 at 4.) The United States therefore proposes that its opening brief be due July 24, 2026, State Administrator DeMarinis's responsive be due August 7, and the United States' reply be due August 14. It further proposes an oral argument date between September 15 and 18. (ECF 6 at 4-5.) This proposed schedule, however, would not provide "a quick answer" in time for the conduct of the general election.

General election ballots must be certified by August 31, 2026, Elec. Law § 9-207(a)(2), so that ballots can begin printing on September 3, *id* at § 9-207(e). Election officials must transmit mail-in ballots to qualified overseas voters and servicemembers by September 19, 2026, 52 U.S.C. § 20302(a)(8)(A), and to qualified domestic voters by September 21, 2026, Elec. Law § 9-306(c)(1). Voter registration must close on October 13, 2026, Elec. Law § 3-302(a), so that early voting can begin on October 22, 2026, Elec. Law § 10-301.1(c).

The United States requests expedition to win this appeal, obtain an unredacted version of Maryland's SVRL, and identify individuals who warrant removal from the list so that election officials can subsequently conduct voter roll maintenance. But that series of events cannot happen instantaneously. As it relates to the last step in the series, even the United States acknowledges that Maryland will need "time to conduct any voter-roll

8

maintenance prior to the election this fall." (ECF 6 at 10.)  Thus, were this Court to issue a decision on the earliest date proposed for oral argument (September 15), election administration deadlines would still pass without any effect from the outcome of this case.

Nonetheless, in support of its request, the United States cites cases from the Sixth Circuit and Ninth Circuit as examples of other courts expediting appeals in similar cases. (ECF 6 at 10.)  However, as noted by the United States, those cases were argued in May 2026 (and decided by trial courts months earlier).  Compared with the United States' proposed argument in September, the schedule in those cases allowed four more months for resolution of the appeals and any necessary resulting actions by the states prior to the general election.  In this case, the United States simply waited too long to reach this appeal for expedited briefing and argument to be a realistic option for purposes of the general election.

The United States' requests to expedite similar appeals in the First Circuit and Seventh Circuit are closer analogues to the circumstances here.  The First Circuit rejected a request to expedite an appeal with a resultant oral argument in September, ordering instead "a standard briefing schedule."  *United State v. Amore*, No. 26-1665, Doc. # 00118471579 (1st Cir. July 6, 2026).  Likewise, the Seventh Circuit flatly denied the United States' request to expedite its appeal with briefing in July and oral argument in September.  *United States v. Wisconsin Elec. Comm'n*, No. 26-2217, Dkt. # 09 (7th Cir. June 12, 2026).  This Court should likewise deny the request to expedite, as it would only serve to prejudice State Administrator DeMarinis in this litigation while also threatening

the timely and orderly conduct of the necessary state actions leading up the general election.

## II. RESOLUTION OF THIS APPEAL CAN HAVE NO EFFECT ON THE CONDUCT OF THE 2026 GENERAL ELECTION.

In its motion, the United States claims, without citing any evidence, that, before the general election, Maryland will transmit absentee and mail-in ballots to "many" ineligible or "fraudulent" voters. (ECF 6 at 3.) Without offering any specifics as to how, the United States' motion to expedite suggests that access by the Department to Maryland's unredacted SVRL would enable identification of these ineligible or fraudulent voters before the general election. The United States therefore seeks to expedite the appeal so that it can safeguard Maryland's election before that election takes place.

The United States cannot accomplish what it endeavors to do, though. Whether the Department actually prevails in this appeal, whether it thereafter is able to prevail in the district court, and whether its review could accurately and reliably identify individuals ripe for removal from Maryland's SVRL, federal law would prohibit such removals before the general election. The NVRA requires any programmatic removal of ineligible voters to end on the 90th day before an election. 52 U.S.C. § 20507(c)(2)(A). For this case, the Department would need to prevail before August 5th in order for its removal efforts to stay compliant with federal law.

In any event, the United States premises its request for expedition on a solution in search of a problem. There has been no evidence in this case that Maryland's SVRL requires any review or subsequent pruning. The United States only assumes and asserts as

much without providing support.  Accordingly, there is no basis in this case for the United States Department of Justice to conduct a pre-election review of Maryland's SVRL.  And there is no concordant basis to expedite matters so that the Department can conduct such a review before the November general election.

## CONCLUSION

For the reasons above, the motion to expedite should be denied.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Jeffrey S. Luoma

_____

JEFFREY S. LUOMA
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland  21202
jluoma@oag.maryland.gov
(410) 576-6441
(410) 576-6955 (facsimile)

Attorneys for Defendant

11

## CERTIFICATE OF COMPLIANCE

1.　　This response complies with the type volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because this response contains 2,918 words.

2.　　This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Jeffrey S. Luoma

_____

Jeffrey S. Luoma

12

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

|  |  |  |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA, | | |
| | * | |
| *Plaintiff-Appellant*, | | |
| v. | * | No. 26-1878 |
| | | |
| JARED DEMARINIS, | * | |
| | | |
| *Defendant-Appellee*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CERTIFICATE OF SERVICE**

I certify that, on this 28th day of July, 2026, Response was filed electronically and served on counsel of record who are registered CM/ECF users.

/s/ Jeffrey S. Luoma

_____

Jeffrey S. Luoma