No. 26-1878

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

JARED DEMARINIS, in his official capacity as State Administrator of Elections for the State of Maryland,

*Defendant-Appellee*,

MARYLAND/DC ALLIANCE FOR RETIRED AMERICANS, COMMON CAUSE, OUT FOR JUSTICE, INC., CARL SNOWDEN, MYRIAM PAUL, and LUIS SIMS,

*Intervenors-Defendants-Appellees*.

On Appeal from the United States District Court for the District of Maryland
No. 1:25-cv-03934-SAG
Hon. Stephanie A. Gallagher

---

**INTERVENOR-DEFENDANT-APPELLEE MARYLAND/DC ALLIANCE
FOR RETIRED AMERICANS' OPPOSITION TO UNITED STATES'
MOTION TO EXPEDITE APPEAL**

---

Uzoma N. Nkwonta
Jacob D. Shelly
Tina Meng Morrison
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Ste. 400
Washington, D.C. 20001
Tel.: (202) 948-1135

*Attorneys for Intervenor-Defendant-Appellee
Maryland/DC Alliance for Retired Americans*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................3

ARGUMENT .........................................................................................................4

    I.    DOJ's failure to act expeditiously is reason alone to deny its Motion. .......4

    II.   DOJ fails to show any serious risk of irreparable harm to any party or the public..................................................................................................9

    III.  Even if DOJ prevails, it is too late to systematically remove voters from the rolls this election cycle.............................................................12

CONCLUSION ....................................................................................................17

i

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Am. C.R. Union v. Phila. City Comm'rs*,
   872 F.3d 175 (3d Cir. 2017) ..................................................................................11, 12

*Arcia v. Florida Secretary of State*,
   772 F.3d 1335 (11th Cir. 2014) ................................................................................ 15, 16

*Bell v. Marinko*,
   367 F.3d 588 (6th Cir. 2004) ...........................................................................................15

*Bellitto v. Snipes*,
   935 F.3d 1192 (11th Cir. 2019) ..................................................................................11, 12

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
   952 F.2d 802 (4th Cir. 1991) ...........................................................................................10

*In re Walsh*,
   229 F. App'x 58 (3d Cir. 2007) ..........................................................................................5

*Mi Familia Vota v. Fontes*,
   129 F.4th 691 (9th Cir. 2025) ...........................................................................................14

*Nader v. Land*,
   115 F. App'x 804 (6th Cir. 2004) .......................................................................................5

*Pub. Int. Legal Found. v. Benson*,
   136 F.4th 613 (6th Cir. 2025) ...........................................................................................11

*Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*,
   872 F.2d 75 (4th Cir. 1989) ...............................................................................................5

*United States v. Adams*,
   No. 3:26-CV-00019, 2026 WL 2123871 (E.D. Ky. July 23, 2026) ........................9

*United States v. Amore*,
   No. 1:25-CV-00639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026).....6, 8

*United States v. Bd. of Elections of New York*,
   No. 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921 (N.D.N.Y. July 10, 2026) ....9

*United States v. Bellows*,
  No. 1:25-CV-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026) ...............9

*United States v. Benson*,
  179 F.4th 470 (6th Cir. June 24, 2026) ....................................... 4, 7, 8

*United States v. Benson*,
  819 F. Supp. 3d 753 (W.D. Mich. Feb. 10, 2026).................................8

*United States v. Clarke*,
  573 U.S. 248 (2014)............................................................16

*United States v. DeMarinis*,
  No. 1:25-cv-03934-SAG, 2026 WL 1780586 (D. Md. June 18, 2026).................8

*United States v. Fontes*,
  No. 2:26-CV-00066-PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026)......8

*United States v. Galvin*,
  No. 1:25-CV-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026) ..............6, 8

*United States v. Koski*,
  No. 3:26-cv-0042, 2026 WL 2032532 (E.D. Va. July 14, 2026)...........................9

*United States v. Oliver*,
  No. 1:25-cv-1193-JCH-JFR, 2026 WL 2031479 (D.N.M. July 14, 2026)............9

*United States v. Oregon*,
  828 F. Supp. 3d 1092 (D. Or. Feb. 5, 2026)...........................................8

*United States v. Scanlan*,
  No. 25-cv-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026)...........................9

*United States v. Schmidt*,
  No. 2:25-cv-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026).................9

*United States v. Thomas*,
  No. 3:26-CV-21, 2026 WL 2070437 (D. Conn. July 17, 2026) ...........................9

*United States v. Warner*,
  No. 2:26-CV-00156, 2026 WL 2018877 (S.D.W. Va. July 13, 2026) ...................9

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026)...........................................................8, 17

*United States v. Wis. Elections Comm'n*,
No. 3:25-CV-1036-JDP, 2026 WL 1430354 (W.D. Wis. May 21, 2026) ..............9

*Va. Coal. for Immigrant Rights v. Beals*,
No. 24-2071, 2024 WL 4601052 (4th Cir. Oct. 27, 2024) ...................................15

**Statutes**

52 U.S.C. § 20507 ...............................................................................10, 11, 12, 13

52 U.S.C. § 21083 ........................................................................................ 10, 12

**Rules**

Fed. R. App. P. 31............................................................................................6

**Other Authorities**

Jen Fifield & Zach Despart, A Federal Tool to Check Voter Citizenship Keeps
Making Mistakes. It Led to Confusion in Texas, Tex. Trib. (Feb. 13, 2026),
https://perma.cc/PCQ4-PG5E ...................................................................16

Kaylie Martinez-Ochao, Eileen O'Connor & Patrick Berry, Tracker of Justice
Department Requests for Voter Information, Brennan Ctr. for Just. (last
updated July 24, 2026), https://perma.cc/6J2Y-LJLY ............................................7

Off. of Legal Couns., *Authority to Obtain and Share Statewide Voter Roll Data*
(May 12, 2026), https://perma.cc/HVS6-AU6E ...................................................14

**INTRODUCTION**

After waiting 14 days from the district court's entry of judgment to notice this appeal, and yet another eight days to move to expedite, the U.S. Department of Justice is suddenly in a hurry.[1] Not to file its *own* brief; it did not propose doing that until July 24—32 days after the district court's decision, 18 days after the notice of appeal, and 10 days after the motion to expedite.[2] Rather, DOJ wants Defendants and the Court to sprint while it dawdles, cutting Defendants' response brief deadline to 14 days and asking the Court to either convene a special argument sitting or forgo argument altogether in this important appeal, in which the private, sensitive data of every Maryland voter is at stake. Mot. 4–5. The Court should deny DOJ's motion and hear the appeal in the ordinary course, as its July 22 scheduling order indicates it presently intends to do. Both the First and Seventh Circuits recently denied DOJ's similar motions to expedite its appeals of orders in Wisconsin, Maine, Rhode Island, and Massachusetts dismissing DOJ's virtually identical complaints, in which DOJ sought to obtain from those states the same relief it seeks here from Maryland. *See* Order, *United States v. Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 23, 2026); Order, *United States v. Galvin*, No. 26-1657 (1st Cir. July 6, 2026); Order, *United*

---

[1] Although the district court's opinion is dated June 18, 2026, it was not docketed until June 22, 2026. The calculations here are based on the opinion's docket date.

[2] DOJ has since indicated it does not intend to file its brief prior to the Court's ruling on its motion to expedite.

*States v. Amore*, No. 26-1665 (1st Cir. July 6, 2026); Order, *United States v. Bellows*, No. 26-1676 (1st Cir. July 6, 2026). This Court should similarly deny DOJ's motion to expedite.

DOJ's lack of urgency has been apparent since the district court proceedings, when it proposed an unhurried briefing schedule under which motions to dismiss did not even become ripe until three months after DOJ sued, and DOJ failed to promptly appeal when those motions to dismiss were granted. Even now, DOJ provides no adequate explanation for why expedition is needed. The most it can muster are baseless insinuations that upcoming elections will not be "secure" if DOJ does not get unprecedented access to personal voter information. Mot. 3–4, 10. That unsubstantiated allegation is absurd. DOJ brings a claim under a statute—the Civil Rights Act of 1960 ("CRA")—that has existed for over six decades, yet never before has it been misused as part of a nationwide dragnet to collect the private information of millions of voters. The nation has enjoyed "secure" elections during that time, DOJ's scaremongering notwithstanding.

In any event, it is already too late for DOJ to achieve its ultimate goal—to systematically remove voters from the Maryland voter rolls—for this year's elections. The NVRA prohibits the systematic cancellation of voter registrations in the 90 days ahead of a federal election, a prohibition that will begin in early August. No matter the outcome of this appeal, DOJ cannot as a practical matter compel the

2

voter list purges it seems to desire until *after* the November election. This further undercuts any need to resolve this appeal and the important issues it raises on an artificially rushed timeline.

## BACKGROUND

This is one of 31 similar lawsuits commenced by DOJ as part of its unprecedented campaign to amass personally identifying information about every registered voter in the country. Last year, DOJ began reaching out to the States and demanding that each provide DOJ with an unredacted version of its statewide voter registration list. Those lists include sensitive personal information that is typically protected from disclosure by state law. Most States refused, and ultimately DOJ sued 30 States and the District of Columbia, seeking to compel that information. DOJ's claimed source of authority for these lawsuits has shifted over time, but it eventually landed on the CRA. DOJ contends that this statute's rarely litigated records preservation and disclosure provision gives DOJ authority to demand records to assess States' compliance with two other, more recently enacted voter registration laws, the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"), even though both contain their own enforcement provisions and neither authorizes the DOJ's unprecedented dragnet for private voter data.

All 17 district courts to address DOJ's claims to date—including in Maryland, Virginia, and West Virginia, the three States that DOJ sued in this Circuit—have

granted motions to dismiss. Recently, the Sixth Circuit affirmed the dismissal of DOJ's suit for Michigan's voter list. *See United States v. Benson*, 179 F.4th 470, 483 (6th Cir. June 24, 2026). DOJ's appeals in the Ninth Circuit of dismissals of its complaints in Washington and Oregon have been argued and await decision. Additional appeals have been noticed in the First and Seventh Circuits, where motions to expedite have been denied; in the Third and Ninth (for Arizona) Circuits, where DOJ chose not to move to expedite; and in the Second, Fourth (for Virginia), Sixth, and Tenth Circuits, where DOJ has not yet indicated whether it will move to expedite.[3]

On July 22, this Court ordered DOJ's opening brief due August 31, response briefs due September 30, and any reply brief due within 21 days of service of response briefs.

## ARGUMENT

### I.    DOJ's failure to act expeditiously is reason alone to deny its Motion.

DOJ's lackadaisical pace in this litigation belies any need to expedite. DOJ took no steps to expedite the district court proceedings, instead agreeing to a briefing schedule under which motions to dismiss would not become ripe until February 27, 2026, three months after DOJ first sued. *See* Compl., *United States v. DeMarinis*,

---

[3] The Ninth Circuit has stayed the appeal of the Arizona decision until resolution of DOJ's appeals of the Washington and Oregon decisions. *See* Order, *United States v. Fontes*, No. 26-3609 (9th Cir. June 22, 2026).

No. 1:25-cv-0394-SAG (D. Md. Dec. 1, 2025), Dkt. No. 1; Replies in Supp. of Mots. to Dismiss, *DeMarinis*, No. 1:25-cv-0394-SAG (D. Md. Feb. 27, 2025), Dkt. Nos. 58, 59, 60. When the district court set a mid-June hearing, DOJ did not urge the court to forego argument and rule quickly on the papers, as it asks this Court to do on appeal. And when the court dismissed the case on June 22, 2026, DOJ sat on its hands, waiting 14 days before even filing its notice of appeal. *See* Notice of Appeal, *DeMarinis*, No. 1:25-cv-0394-SAG (D. Md. July 6, 2025), Dkt. No. 94. DOJ's insistence that "this timing is not of United States' making," Mot. 4, is irreconcilable with that procedural history, and its delay alone is sufficient reason to deny the motion to expedite. *E.g.*, *Nader v. Land*, 115 F. App'x 804, 806 (6th Cir. 2004) ("[The Court] den[ies] the motion to expedite this appeal, principally because the plaintiffs have not proceeded expeditiously."); *In re Walsh*, 229 F. App'x 58, 61 (3d Cir. 2007) (per curiam) (denying motion to expedite appeal when it was not "made promptly"); *cf. Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989) (noting that when an application for emergency relief "is based upon an urgent need for the protection of [a] Plaintiff's rights, a long delay in seeking relief indicates that speedy action is not required").

It gets worse, however, because DOJ delays even now as it seeks expedition. DOJ requested that its opening brief be due on July 24—32 days after the order dismissing its suit in Maryland and 18 days after its notice of appeal—and still has

5

not filed its brief even as that proposed deadline has come and gone. Despite helping itself to such a leisurely briefing schedule, DOJ asks this Court to give Defendants just 14 days to respond—substantially less than the 30 days that the Federal Rules provide. *See* Fed. R. App. P. 31(a)(1). DOJ makes no effort to explain how this lopsided allotment comports with its supposed need for expedition.

DOJ also procrastinated in the appeals it seeks in other circuits. When the district court in Massachusetts dismissed DOJ's substantially identical suit, DOJ waited *53 days* to notice the appeal. *See United States v. Galvin*, No. 1:25-CV-13816-LTS, 2026 WL 972129, at *6 (D. Mass. Apr. 9, 2026); Notice of Appeal, *Galvin*, No. 1:25-CV-13816-LTS (D. Mass. June 1, 2026), Dkt. No. 95. And when the district court in Rhode Island dismissed DOJ's claim for that State's unredacted voter list, DOJ waited *47 days* to notice the appeal. *See United States v. Amore*, No. 1:25-CV-00639-MSM-PAS, 2026 WL 1040637, at *6 (D.R.I. Apr. 17, 2026); Notice of Appeal, *Amore*, No. 1:25-CV-00639-MSM-PAS (D.R.I. June 3, 2026), Dkt. No. 53. Yet DOJ filed cookie-cutter motions to expedite in both of those appeals, too. Appellant's Mot. Expedite, *Galvin*, No. 26-1657 (1st Cir. June 12, 2026); Appellant's Mot. Expedite, *Amore*, No. 26-1665 (1st Cir. June 17, 2026). DOJ still has not noticed an appeal of its loss in West Virginia, and it did not seek to expedite its appeal

6

in Pennsylvania and Arizona. These are not the actions of a litigant that truly believes its claims require expedited proceedings.[4]

DOJ's rushed schedule would also give short shrift to the important issues in this case, which implicate the privacy and voting rights of millions of citizens, as well as the balance of authority between the States and the federal government to manage voter registration. These important issues are not cabined to Maryland—DOJ has filed 31 substantially identical suits across the nation, including in 11 of the 13 circuits.[5] Recently, the Sixth Circuit affirmed the district court's dismissal of DOJ's suit for Michigan's unredacted voter list, reasoning that a statewide voter registration database does not come into the possession of state officials and therefore falls outside the scope of the CRA. *See Benson*, 179 F.4th at 483. The Sixth

---

[4] DOJ has plodded along at the same leisurely pace in district courts across the country. For example, after DOJ failed to timely serve its complaint demanding Washington's unredacted voter list, the district court issued an order to show cause why the case should not be dismissed for lack of prosecution—which eventually prompted DOJ to serve the complaint more than 100 days after it filed suit. Order, *United States v. Hobbs*, 3:25-CV-06078-SKV (W.D. Wash. Mar. 26, 2026), Dkt. No. 22. Even where DOJ *has* managed timely service, it has often waited months. *See United States v. Koski*, 3:26-CV-00042-RCY (E.D. Va. Apr. 14, 2026), Dkt. No. 33 (serving complaint 77 days after filing); *United States v. Evans*, 1:25-CV-4403-RDM (D.D.C. Feb. 3, 2026), Dkt. No. 31 (serving complaint 46 days after filing). DOJ's conduct in these cases reveals that it sees no need to move quickly when it comes to obtaining unredacted statewide voter registration lists.

[5] Kaylie Martinez-Ochao, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (last updated July 24, 2026), https://perma.cc/6J2Y-LJLY.

Circuit also concluded that DOJ failed to state both a basis and purpose for its demand in a single letter, as Title III requires. *Id*. DOJ's appeals in the Ninth Circuit have been argued and await decision. And, as noted, the First and Seventh Circuits recently denied DOJ's requests to expedite its appeals. *See* Order, *Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 23, 2026); Order, *Galvin*, No. 26-1657 (1st Cir. July 6, 2026); Order, *Amore*, No. 26-1665 (1st Cir. July 6, 2026); Order, *Bellows*, No. 26-1676 (1st Cir. July 6, 2026).

While courts have uniformly rejected DOJ's lawsuits, the grounds for dismissal have varied—reflecting both the novelty of DOJ's claim and its many defects. *See, e.g.*, *United States v. DeMarinis*, No. 1:25-cv-03934-SAG, 2026 WL 1780586, *4–6 (D. Md. June 18, 2026) (dismissing on grounds that voter lists are outside the scope of the CRA because they do not "come into" the possession of election officials, as statute requires); *Galvin*, 2026 WL 972129, at *3–6 (dismissing on grounds that DOJ failed to state a factual basis for its CRA demand, as statute requires); *Amore*, 2026 WL 1040637, at *4–6 (dismissing on grounds that DOJ failed to state a factual basis for its CRA demand and that its stated purpose did not plausibly relate to investigating violations of voting rights, as statute requires).[6] This

---

[6] *See also United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. Feb. 5, 2026), *argued*, No. 26-1231 (9th Cir. May 19, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026), *argued*, No. 26-1232 (9th Cir. May 19, 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. Feb. 10, 2026), *affirmed*, 179 F.4th 470 (6th Cir. June 24, 2026); *United States v. Fontes*, No. 2:26-CV-00066-

appeal therefore involves important questions that implicate millions of voters, reflects diverse and varied reasoning among the lower courts, and is likely to be resolved while multiple other courts of appeals weigh the same questions. This Court should not rush an appeal that so clearly calls for careful briefing, oral argument, and considered judgment.

## II.    DOJ fails to show any serious risk of irreparable harm to any party or the public.

DOJ claims that "prompt resolution" of this appeal is necessary because otherwise "irreparable harm will occur to voters of Maryland and the United States." Mot. 10. But that assertion is entirely unsupported; indeed, DOJ does not even

PHX-SMB, 2026 WL 1177244 (D. Ariz. Apr. 28, 2026), *appeal docketed*, No. 26-3609 (9th Cir. June 4, 2026); *United States v. Wis. Elections Comm'n*, No. 3:25-CV-1036-JDP, 2026 WL 1430354 (W.D. Wis. May 21, 2026), *appeal docketed*, No. 26-2217 (7th Cir. June 5, 2026); *United States v. Bellows*, No. 1:25-CV-00468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026), *appeal docketed*, No. 26-1676 (7th Cir. June 15, 2026); *United States v. Schmidt*, No. 2:25-cv-01481-CB, 2026 WL 1850016 (W.D. Pa. June 27, 2026), *appeal docketed* No. 26-2684 (3d Cir. July 7, 2026); *United States v. Scanlan*, No. 25-cv-371-JL, 2026 WL 1864054 (D.N.H. June 29, 2026); *appeal docketed* No. 26-1783 (1st Cir. July 7, 2026); *United States v. Bd. of Elections of New York*, No. 1:25-CV-1338 (MAD/PJE), 2026 WL 1999921 (N.D.N.Y. July 10, 2026), *notice of appeal filed* (N.D.N.Y. July 23, 2026); *United States v. Warner*, No. 2:26-CV-00156, 2026 WL 2018877 (S.D.W. Va. July 13, 2026); *United States v. Oliver*, No. 1:25-cv-1193-JCH-JFR, 2026 WL 2031479 (D.N.M. July 14, 2026); *appeal docketed* No. 26-2126 (10th Cir. July 27, 2026); *United States v. Koski*, No. 3:26-cv-0042, 2026 WL 2032532 (E.D. Va. July 14, 2026), *notice of appeal filed* (E.D. Va. July 24, 2026); *United States v. Thomas*, No. 3:26-CV-21, 2026 WL 2070437 (D. Conn. July 17, 2026), *notice of appeal filed* (D. Conn. July 23, 2026); *United States v. Adams*, No. 3:26-CV-00019, 2026 WL 2123871 (E.D. Ky. July 23, 2026); *appeal docketed* No. 26-5657 (6th Cir. July 24, 2026).

9

explain *what* harm might befall States or voters absent expedited resolution of this appeal, which will only resolve the threshold question of whether DOJ has stated a claim to obtain certain private voter data. DOJ's theory of irreparable harm, though largely unexplained, appears to be that voter rolls in Maryland could "*potentially*" include ineligible voters. Mot. 3 (emphasis added). But such speculation does not come close to demonstrating irreparable harm. Rather, a finding of irreparable harm must be based on harm that is "present or immediate," not "conditioned on possible future events." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991).

DOJ's theory of irreparable harm also suffers from at least two fundamental legal misconceptions concerning *who* is responsible for conducting voter list maintenance and *what* federal law requires with respect to voter roll hygiene. Voter list maintenance is a responsibility of the States, not the federal government. *See* 52 U.S.C. § 20507(a)(4); *id.* § 21083(a)(1). And the NVRA does not require States— and certainly not DOJ—to ensure that their "voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal statewide elections," as DOJ claims. Mot. 14. To the contrary, in order to *protect* voters against the irreparable harm that occurs when they are removed in error when list maintenance is conducted in a rushed or haphazard manner, the NVRA *forbids* States from removing certain ineligible voters—i.e., those who have moved away—absent express voter consent

10

or the passage of several election cycles. *See* 52 U.S.C. § 20507(d)(1). The NVRA therefore expressly contemplates that at least some residually ineligible voters will remain on the rolls for some period of time. Further, the statute only requires that the States make "reasonable effort[s]" to remove certain categories of ineligible voters from their rolls. *Id.* § 20507(a)(4). Those efforts "need not be perfect, or even optimal," just "within the bounds of rationality." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025); *see also Bellitto v. Snipes*, 935 F.3d 1192, 1207 (11th Cir. 2019) ("[T]he NVRA only requires . . . a reasonable effort, not an exhaustive one . . . ."); *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 178–79 (3d Cir. 2017) (explaining the NVRA "places limited requirements on states to remove ineligible voters from the rolls"). DOJ cannot even muster enough to allege that Maryland is falling short of this modest list maintenance standard, never mind that it is doing so in a manner that constitutes irreparable harm to any party or the public.

Finally, in a last gambit, DOJ raises the "specter of non-citizens . . . remaining on [the] voter rolls" in elections this fall. Mot. 15. But DOJ *never* raised the issue of noncitizens appearing on state voter rolls in *any* of its pre-suit correspondence with Maryland and likewise failed to make—never mind plausibly allege or substantiate—such an allegation in its pleadings. This scaremongering about noncitizen voters is not only baseless, but also untethered to the NVRA itself, which

11

imposes affirmative list maintenance obligations on States only as to specific categories of ineligible voters—those who move or die—but notably not noncitizens. *See* 52 U.S.C. § 20507(a)(4); *see also Bellitto*, 935 F.3d at 1195 (explaining the NVRA "requires a reasonable effort to remove *only* those voters who become ineligible because of death or change of address" (emphasis added)); *Am. C.R. Union*, 872 F.3d at 182 ("By its terms, the mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away.").[7] In short, DOJ's newly raised and unsubstantiated concern about noncitizens possibly being registered to vote provides no basis to expedite this appeal.[8]

### III. Even if DOJ prevails, it is too late to systematically remove voters from the rolls this election cycle.

Finally, DOJ claims that voters and election officials alike require a "quick answer" here, Mot. 4, apparently so that drastic but unspecified actions can be taken before the midterm elections with regard to the voter rolls. But regardless of how

---

[7] While the NVRA only places affirmative list removal obligations on States as to specific categories of ineligible voters, other provisions of the NVRA meant to avoid improper removals sweep more broadly. *Compare* 52 U.S.C. § 20507(a)(4) (affirmatively requiring States to make "reasonable effort" to remove specific categories of ineligible voters), *with id.* § 20507(c)(2)(A) (requiring States to complete "*any* program" for systematic removal of ineligible voters "not later than 90 days prior" to a primary or general election (emphasis added)).

[8] Since "[n]othing in HAVA broadens the scope of the NVRA's list-maintenance obligations," *Bellitto*, 935 F.3d at 1202, a State's list-maintenance obligations under HAVA are the same as under the NVRA. *See* 52 U.S.C. § 21083(a)(2)(A)(i) (stating list maintenance obligations under HAVA are "in accordance with" the NVRA).

this appeal is decided, DOJ's belated attempt to expedite these proceedings comes too late. The NVRA bars "any program . . . to systematically remove" voters from a State's rolls within 90 days of a primary or general election. 52 U.S.C. § 20507(c)(2)(A). Maryland's primary election took place on June 23; the next federal election will be the November 3 general election. Accordingly, August 5 is the deadline to complete systematic removals before the NVRA's "quiet period" begins for the November election. After that, Maryland cannot be made to systematically remove voters from its rolls. That means the ship has sailed on DOJ's aim of forcing voter purges before the 2026 elections, as the First and Seventh Circuits may have recognized in recently denying similar motions to expedite from dismissal orders in Wisconsin, Maine, Rhode Island, and Massachusetts. *See* Order, *Wis. Elections Comm'n*, No. 26-2217 (7th Cir. June 23, 2026); Order, *Galvin*, No. 26-1657 (1st Cir. July 6, 2026); Order, *Amore*, No. 26-1665 (1st Cir. July 6, 2026); Order, *Bellows*, No. 26-1676 (1st Cir. July 6, 2026).

DOJ notes that two other circuits previously expedited appeals in these cases, but the First and Seventh Circuits' recent denials of similar motions to expedite are far more instructive here than the earlier orders on motions to expedite from the Sixth and Ninth Circuit. The appeals in the Sixth and Ninth Circuit were filed more than four months ago, and DOJ sought to expedite them—specifically because it desired decisions *before* August and the start of the NVRA's quiet period. *See*

13

Appellants' Mot. Expedite at 15, *United States v. Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026), Dkt. No. 6-1 ("Michigan's next federal election is rapidly approaching on November 3, 2026, and *Michigan must finish* removing nonvoters from its rolls in systemic processes *by* August 4, 2026" (first emphasis added)); Appellant's Mot. Expedite at 3, *United States v. Weber*, No. 26-1232 (9th Cir. Mar. 3, 2026), Dkt. No. 12 (similar); Appellant's Mot. Expedite at 3, *United States v. Oregon*, No. 26-1231 (9th Cir. Mar. 3, 2026), Dkt. No. 12 (similar). But under DOJ's proposed schedule here, DOJ's own reply brief would be due on August 14—days *after* the drop-dead deadline it argued for in its previous motions to expedite.

DOJ now attempts to backtrack, vaguely suggesting—contrary to what it argued in the prior appeals—that the mass cancellation of voter registrations that it apparently desires could be accomplished in some unspecified way while still complying with the NVRA. *See* Mot. 14 (claiming there are other list maintenance activities that Maryland can conduct during the 90-day period). This newfound and unsubstantiated position also runs headlong into DOJ's own announced plan to compare any unredacted voter lists that it receives against databases maintained by the Department of Homeland Security,[9] which would undoubtedly constitute a "systematic" program under the NVRA. *See Mi Familia Vota v. Fontes*, 129 F.4th

---

[9] *See* Off. of Legal Couns., *Authority to Obtain and Share Statewide Voter Roll Data* at 1, 39 (May 12, 2026), https://perma.cc/HVS6-AU6E.

691, 716 (9th Cir.) (explaining that removals based on mass "comparisons to databases" constitute systematic removals), *reh'g en banc denied*, 152 F.4th 1153 (9th Cir. 2025), *cert. granted on other issues sub nom. Republican Nat. Comm. v. Mi Familia Vota*, No. 25-1017, 2026 WL 1855101 (U.S. June 29, 2026).[10] Indeed, DOJ does not dispute that the chief reason it wants unredacted voter lists—rather than public voter lists—is to obtain personal identifiers that would facilitate database matching. Pls.' Mem. Opp'n Mot. Dismiss at 25, *DeMarinis*, No. 1:25-cv-03934-SAG (D. Md. Feb. 13, 2026), Dkt. No. 56. DOJ's recent efforts at such database matching—using statewide voter lists from the minority of States that acquiesced to its demands—have resulted in the precise sort of inaccuracies and widespread false positives that the NVRA's quiet period is meant to protect against on the eve of an

---

[10] The cases DOJ cites on this only go to show why the NVRA would bar the removals DOJ contemplates. *Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004), for instance, involved *individualized*, voter-by-voter determinations of residency and removals based on eligibility findings by a local election board—the precise opposite of the database comparisons DOJ contemplates here. In *Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014), the court found that a program to remove noncitizens from the rolls after compiling a "list" of potential noncitizens based on comparison to the same Department of Homeland Security database DOJ intends to use here was a "systematic" program within the meaning of the law and thus could not be executed within 90 days of an election. And *Va. Coal. for Immigrant Rights v. Beals*, No. 24-2071, 2024 WL 4601052, at *1 (4th Cir. Oct. 27, 2024), *stay granted*, No. 24A407, 2024 WL 4608863 (U.S. Oct. 30, 2024), found a removal program violated the 90-day bar when it targeted registrants based on their name appearing on "a list electronically compared to other agency databases"—just as DOJ envisions here.

election, "when the risk of disfranchising eligible voters is the greatest." *Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1346 (11th Cir. 2014).[11]

Other practical obstacles also foreclose DOJ's desire to force voter purges before the November election. *First*, even if this Court concludes that DOJ has adequately stated a CRA claim—and thus passed the initial pleading threshold imposed by the Federal Rules—that would not automatically result in judgment for DOJ. Any remand would require further proceedings to resolve underlying factual disputes, including as to DOJ's intended uses for the unredacted voter lists. *See United States v. Clarke*, 573 U.S. 248, 254 (2014) (recognizing recipients of government document demands are entitled to discovery into government's motive when they can "make a showing of facts that give rise to a plausible inference of improper motive"). There is serious reason to doubt DOJ's stated motive for demanding States' unredacted voter lists, as several courts have already noted and as further evinced by DOJ's belated arguments concerning noncitizen voters. *See United States v. Oregon*, 828 F. Supp. 3d 1092, 1107 (D. Or. Feb. 5, 2026 ) (after dismissing DOJ's claims, noting the court's "serious doubt as to the true purposes for which Plaintiff is seeking voter registration lists in this and other cases, and what

---

[11] *See* Jen Fifield & Zach Despart, *A Federal Tool to Check Voter Citizenship Keeps Making Mistakes. It Led to Confusion in Texas*, Tex. Trib. (Feb. 13, 2026), https://perma.cc/PCQ4-PG5E.

it intends to do with that data"); *United States v. Weber*, 816 F. Supp. 3d 1168, 1184 (C.D. Cal. 2026) (finding DOJ's stated purpose in seeking California's unredacted voter list was "contrived" and "pretextual").

*Second*, even if DOJ prevailed on remand and through any further appeals after summary judgment or trial, its only relief would be to obtain and inspect Maryland's unredacted voter lists. Even assuming that DOJ then concluded, after reviewing that list, that it has a *further* claim against Maryland for not complying with the NVRA or HAVA, DOJ would then need to bring a *new* lawsuit alleging a violation of those statutes, and then prevail through any appeals, before Maryland could be ordered to undertake additional, unspecified list-maintenance efforts. And then Maryland would need time to actually implement any such removal program, subject to constraints on voter removals in the NVRA, including the 90-day quiet period. Given these contingencies, it is not feasible under any set of circumstances for DOJ to compel systemic voter purges before the November election and, accordingly, there is no basis to rush to resolve this appeal before that election.

## CONCLUSION

DOJ's motion to expedite should be denied. At minimum, the Court should afford Appellees a full 30-day period to respond to DOJ's opening brief and should hold oral argument in this matter.

17

Dated: July 28, 2026

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta
Jacob D. Shelly
Tina Meng Morrison
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Ste. 400
Washington, D.C. 20001
Tel.: (202) 948-1135
unkwonta@elias.law
jshelly@elias.law
tmengmorrison@elias.law

*Attorneys for Intervenor-Defendant-Appellee MD/DC Alliance for Retired Americans*

18

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,597 words, excluding parts of the brief exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

Dated: July 28, 2026                      */s/ Uzoma N. Nkwonta*
                                             Uzoma N. Nkwonta

## CERTIFICATE OF SERVICE

I certify that on July 28, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: July 28, 2026                      */s/ Uzoma N. Nkwonta*
                                          Uzoma N. Nkwonta