IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 26-1878

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

JARED DEMARINIS, in his Official Capacity as State Administrator of
Elections for the State of Maryland,

Defendant-Appellee

MARYLAND/DC ALLIANCE FOR RETIRED AMERICANS; COMMON
CAUSE; OUT FOR JUSTICE, INC.; CARL SNOWDEN; MYRIAM
PAUL; LUIS SIMS,

Intervenors/Defendants-Appellees

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

———————————

UNITED STATES' REPLY TO OPPOSITIONS TO UNITED STATES'
EMERGENCY MOTION TO EXPEDITE BRIEFING

———————————

**INTRODUCTION**

None of the arguments advanced by defendant-appellee State

Administrator DeMarinis, intervenors-defendants-appellees Common

Cause, Out For Justice, Inc., Carl Snowden, Myriam Paul, And Luis Sims, or intervenor-defendant -appellee Maryland/DC Alliance for Retired Americans (Maryland/DC Alliance) (collectively Defendants) warrant this Court denying the United States' Motion to Expedite. First, the requested statewide voter registration list (SVRL) is urgently necessary for core election administration procedures ahead of the November 2026 election. Defendants' disagreement over the merits of the United States' position does not obviate that importance or urgency. Second, the United States has acted with a sense of urgency sufficient to support expedited relief.

## ARGUMENT

### I.    The requested SVRL is urgently necessary for core election administration procedures.

As the United States explained in its Motion (Mot.), an expedited appeal is necessary to allow the United States to confirm—before the 2026 federal elections—that Maryland's voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal elections. Mot. 14-15 (C.A. Doc. 6).[1] Verifying the required Help America Vote Act

---

[1] "C.A. Doc. ___" refers to the docket entries filed in this Court. "Doc. __, at __" refers to the docket entries filed in the district court, No. 1:25-

(HAVA) identification numbers on the voter rolls and determining the citizenship, residence, and vitality of the voters on Maryland's SVRL will permit Maryland's state election officials to ensure that the SVRL is "accurate." 52 U.S.C. 21083(a)(4). Absent a prompt resolution of this appeal, there is a significant prospect of harm to individual voter rights due to the risk of non-citizens and ineligible voters remaining on Maryland's voter rolls. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021) ("[F]raudulent votes dilute the right of citizens to cast ballots that carry appropriate weight."); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) ("Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised.").

*First*, Intervenors resist this premise by claiming "those are not time-sensitive concerns." Intervenors Opp'n 10 (C.A. Doc. 18-1). Intervenors claim "a free and fair election for Maryland's voters in 2026 can proceed without accelerating the resolution of United States' appeal." *Ibid*. But that assumes—without evidence—that the concerns prompting the Attorney General to invoke Article III of the CRA to demand production of the SVRL will ultimately prove meritless.

---

cv-03934 (D. Md.).

That assumption misunderstands that the purpose of a Title III demand *is to investigate*, *not prove*, violations of federal election laws. To further that investigation, Title III provides that specified voting records "shall . . . be made available" to the Attorney General as long as he provides "a statement of the basis and the purpose therefor." 52 U.S.C. 20703. While Intervenors suggest it is "entirely speculative" whether the SVRL will promote "the security and accuracy of federal elections[,]" (Intervenors Opp'n 11), it is the prerogative of the United States to determine the probative value of records collected in an investigation— not Defendants. Whether Intervenors *agree* with the concerns predicating the investigation does not minimize the importance of the SVRL. Nor does it minimize the time-sensitive nature of that investigation with a federal election fast approaching.

Indeed, the timing of the federal election is obviously the temporal concern motivating the United States' request to expedite. The SVRL is the starting place for federal elections in Maryland. The SVRL is not just any voting-related record; it is the only federally mandated state record that is required to "serve as the official voter registration list for the conduct of *all elections* for Federal office in the State." 52 U.S.C.

- 4 -

21083(a)(1)(A)(viii) (emphasis added). To receive the list only after the election would deprive the United States of a vital tool in ensuring that Maryland's voter rolls are properly maintained in preparation for the upcoming election. "[O]nce the election occurs, there can be no do-over and no redress." *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014).

*Second, all* Defendants minimize the United States' election integrity concerns by suggesting the United States "has provided no proof" of its concerns. Intervenors Opp'n 11-12; s*ee also* DeMarinis Opp'n 6 ("Nor has the United States provided any reason to believe that Maryland's SVRL suffers from 'integrity' or 'security' issues requiring a pre-election review."), 10 ("There has been no evidence in this case that Maryland's SVRL requires any review or subsequent pruning.").

To start, Defendants provide no authority to support that such proof is required to establish good cause for expedited relief. Along similar lines, although irreparable harm is evident,[2] irreparable harm is

---

[2] For example, "[c]ourts routinely deem restrictions on fundamental voting rights irreparable injury[,]" *League of Women Voters of N. Carolina*, 769 F.3d at 247, and "[a]ny time" the United States is prevented "from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606

not the standard. *Compare* Intervenors Opp'n 9 *with* Maryland/DC Alliance Opp'n 10 (C.A. Doc. 22). What's more, the United States *did* provide Maryland with factual support for its concerns in the form of EAVS data. Doc. 2-2, at 2-3. And as Defendants just emphasized: "[t]he only question in this case is whether DOJ can compel the production of unredacted voter data that is protected by law." Intervenors Opp'n 10; *see also* Doc. 2-1, at 5.[3] It follows that the United States cannot be required to produce a certain level of proof of the election concerns inspiring that demand to show good cause for expedited relief.

*Third*, Defendants argue that "there is no realistic way Appellant would be able to obtain any list maintenance changes in Maryland ahead of the election." Intervenors Opp'n 3; *see also id.* at 16 ("there is no realistic pathway for DOJ to remedy its (nonexistent) problem"); Maryland/DC Alliance Opp'n 13 ("DOJ's belated attempt to expedite these proceedings comes too late . . . the ship has sailed on DOJ's aim of forcing voter purges before the 2026 elections.").

---

U.S. 831, 835 (2025) (citation omitted).

[3] Contrary to Defendants' assertion (Intervenors Opp'n 10), the narrowness of the legal question does not dictate the breadth of its impact.

Defendants cite the NVRA as a barrier to pre-election removal of ineligible voters from the SVRL. DeMarinis Opp'n 10; Maryland/DC Alliance Opp'n 13. The NVRA generally prohibits *States* from "systematically remov[ing] the names of ineligible voters from the official lists of eligible voters" less than 90 days before a federal election. 52 U.S.C. 20507(c)(2)(A). But any removal of ineligible voters from the SVRL based on an individualized recommendation or alert from the United States is not a "systematic" removal by the State and thus does not implicate the NVRA's 90-day quiet period. *See Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014) ("[T]he 90 Day Provision permits removals based on individualized information at any time."). And, notwithstanding Defendants' assertions (Maryland/DC Alliance Opp'n 14-15; DeMarinis Opp'n 10), the NVRA's plain text does not prohibit the *DOJ* from using a systematic program to evaluate the reasonableness of Maryland's list maintenance, or identify individuals to which Maryland can perform individual determinations, regardless of timing. If this Court rules in favor of the United States in August or September, it is possible to legally identify and remove fraudulent and ineligible voters from the SVRL before November 3.

- 7 -

Intervenors also claim success on appeal "would not automatically result in judgment for the DOJ" or that "[a]ny remand would require further proceedings to resolve underlying factual disputes[.]" Maryland/DC Alliance Opp'n 16. There is no need for a remand to resolve "underlying factual disputes" because there are no disputed material facts: the United States demanded Maryland's SVRL, and Maryland refused to provide it. This Court can—and should—order the district court to immediately require Maryland to produce the SVRL pursuant to Title III.

Intervenors speculate that because the United States "does not and cannot request any list maintenance as a part of its relief in this case[,]" (Intervenors Opp'n 3), that the only way to obtain meaningful relief would be through "a *new* lawsuit" (Maryland/DC Alliance Opp'n 17). But Defendants ignore a realistic alternate possibility: that States including Maryland would simply elect voluntary compliance to avoid the criminal sanctions that may be incurred by state officials that knowingly conspire with noncitizens to permit them to vote, 52 U.S.C. 21144, or knowingly tabulate fictitious ballots. 52 U.S.C. 20511(2).

*Fourth*, Intervenors argue that the United States' "concern about noncitizens possibly being registered to vote provides no basis to expedite this appeal" because the NVRA "imposes affirmative list maintenance obligations on States only as to specific categories of ineligible voters— those who move or die—but notably not noncitizens." Maryland/DC Alliance Opp'n 11-12. But the United States has an important role in ensuring that voter lists are properly kept. The Attorney General has enforcement authority under both the NVRA and HAVA. 52 U.S.C. 20510(a), 21111. The United States may prosecute those who "knowingly and willfully deprive[], defraud[], or attempt[] to deprive or defraud the residents of a State of a fair and impartially conducted election process" by "procur[ing] . . . voter registration applications," or "tabulat[ing] . . . ballots," if those applications or ballots "are known by the person to be materially false, fictitious, or fraudulent under the laws of the State in which the election is held." 52 U.S.C. 20511(2). True, Maryland has the ultimate responsibility under the NVRA, 52 U.S.C. 20507(a)(4), and HAVA, 52 U.S.C. 21083(a)(2)(A), to conduct reasonable list maintenance. But Maryland residents need to know—before the election—that the SVRL is accurate.

*Fifth*, Maryland/DC Alliance argues that expedited treatment is improper because this case "clearly calls for careful briefing, oral argument, and considered judgment" and a "rushed schedule would also give short shrift to the important issues in this case." Maryland/DC Alliance Opp'n 7, 9. This Court is capable of deciding this pure question of law on an expedited basis. *See, e.g.*, *TikTok Inc. v. Garland*, 604 U.S. 56, 62 n.1 (2025) (per curiam) (indicating that roughly one month passed between applications for an injunction pending review and the Supreme Court's decision in a complex case regarding national security and the First Amendment).

## II.  The United States has consistently acted with urgency in this matter.

Defendants argue that the Motion to Expedite should be denied because "DOJ's lackadaisical pace in this litigation belies any need to expedite." Maryland/DC Alliance Opp'n 4; *see also* Intervenors Opp'n 12 ("[T]he United States' own delay in initiating and litigating this case belies its own argument for supposed 'good cause.'"). The United States has acted with urgency throughout this entire case.

Defendants first fault the United States for waiting "more than three months after the State Administrator's August 25th letter" to file this lawsuit on December 1, 2025. DeMarinis Opp'n 2. But Defendants ignore that during a significant portion of this time (October 1 to November 12, 2025) the federal government was shut down, Cong. Res. Serv., R48832, *The 2025 (FY2026) Government Shutdown: Economic Effects* 1 (Jan. 29, 2026), and federal law generally does not permit federal employees to work during federal shutdowns, 31 U.S.C. 1342.[4]

DeMarinis also posits that "the United States had taken no issue with this case proceeding along the normal and customary timelines provided by the Federal Rules of Civil Procedure and applicable Local Rules" in the district court. DeMarinis Opp'n 6. But the United States has pursued its requested relief under Title III of the CRA, 52 U.S.C. 20703, 20705, which provides an inherently expedited process.

Title III provides "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962).

---

[4] The United States' timing in *other* cases (*see* Maryland/DC Alliance Opp'n 6-7), is entirely irrelevant to whether *this* appeal should be expedited.

- 11 -

The Attorney General may come to court and seek an order to produce the requested records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Ibid.* The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-827 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). Once the Attorney General provides a "simple statement" that demand has been made and refused, "[t]he Court, *with expedition*, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down *without delay* for suitable hearing on the matters open for determination." *Lynd*, 306 F.2d at 226 (emphasis added).

Operating under that assumption, there was no need to "seek immediate injunctive relief" or "request any expedient process from the district court." DeMarinis Opp'n 6-7; *see also* Maryland/DC Alliance Opp'n 5. Instead, simultaneously with the Complaint, the United States filed its motion to compel the records demanded under Title III (Doc. 2). In support of that motion, the United States expressly invoked the special

statutory proceeding contemplated by the text of Title III and *Lynd. See* Doc. 2-1, at 5.

Intervenors' other complaints about the timeliness of filings in the district court do not establish undue delay. For example, waiting to file "summons returned executed for all Defendants" and "a certificate of service" has no impact on the pace of the proceedings. Intervenors Opp'n 14. To further refute any insinuation that the DOJ unreasonably delayed in serving the summons, Administrator DeMarinis entered an appearance only 16 days after the summons was issued. Doc. 9. Intervenors appear to fault the United States for not opposing extensions sought below. *See* Maryland/DC Alliance Opp'n 4. Setting aside the fact that urgency can still coexist with professional courtesy, a schedule where the merits of the case would be ripe a mere three months after filing is objectively expedient compared to an ordinary pre-trial proceeding. The district court granted the Motion to Dismiss and denied the United States' Motion to Compel on June 18, 2026. Doc. 91. Had the United States prevailed, it would have had ample time before the November 3, 2026, general election to confirm the integrity of Maryland's SVRL.

Defendants also suggest that the United States unnecessarily delayed on appeal, citing the 14 days between the docketing of the district court's Order and the United States' Notice of Appeal. *See* DeMarinis Opp'n 7; Maryland/DC Alliance Opp'n 5. The United States had 60 days to file a notice of appeal, Fed. R. App. P. 4(a)(1)(B)(i), and took just 14 days—a quarter of the permissible time—to do so. This shows speed, not delay. *See, e.g.*, *Nader v. Land*, 115 F. App'x 804, 806 (6th Cir. 2004) (involving a six-week delay "between the appealed-from order and the motion to expedite"). As for waiting "eight more days" to file its Motion to Expedite (Intervenors Opp'n 14), the United States had to wait until the appeal was docketed before it could file its Motion—which it did the same day. *See* C.A. Doc. 1.

## CONCLUSION

The court should grant the United States' Motions to Expedite this matter.

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
AUDREY A. WEAVER
DAVID N. GOLDMAN
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 532-3803

Date: July 29, 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2534 words, excluding the parts exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: July 29, 2026