**No. 26-1878**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

– v. –

JARED DEMARINIS, in his official capacity as State Administrator of Elections for the State of Maryland,

*Defendant-Appellee*

MARYLAND/DC ALLIANCE FOR RETIRED AMERICANS; COMMON CAUSE; OUT FOR JUSTICE, INC.; CARL SNOWDEN; MYRIAM PAUL; LUIS SIMS,

*Intervenors-Defendants.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

---

**MOTION FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE***
**LIBERTY LEGAL FOUNDATION**
**IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL**

---

Stacey Bucci
LIBERTY LEGAL FOUNDATION
P.O. Box 443
Bennington, Vermont 05201
518-407-3020
stacey@libertylegalusa.org

Ronald D. Coleman
COLEMAN LAW FIRM, PC
50 Park Place
Newark, New Jersey 07102
973-264-9611
rcoleman@colemanlaw-pc.com

*Counsel for Amicus Curiae*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-1878 Caption: USA v. JARED DEMARINIS ET AL.

Pursuant to FRAP 26.1 and Local Rule 26.1,

LIBERTY LEGAL FOUNDATION
(name of party/amicus)

______________________________________________________

who is AMICUS, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Ronald D. Coleman Date: August 17, 2026

Counsel for: Amicus Curiae

**LIBERTY LEGAL FOUNDATION'S MOTION FOR LEAVE TO FILE *AMICUS CURIAE* BRIEF**

Pursuant to the Federal Rules of Appellate Procedure 29(a)(2)-(3), Liberty Legal Foundation respectfully moves for leave to file the accompanying *amicus curiae* brief in support of Plaintiff-Appellant United States of America.

Counsel for Plaintiff-Appellant and Defendant-Appellee Jared DeMarinis and Intervenor-Defendants Carl Snowden, Common Cause, Luis Sims, Maryland/DC Alliance for Retired Americans, Myriam Paul, and Out for Justice, Inc. have consented to the filing of the Liberty Legal Foundation *amicus* brief. Liberty Legal Foundation's proposed brief is attached to this motion.

Liberty Legal Foundation is a Delaware corporation exempt from income tax under 26 U.S.C. § 501(c)(3). It is a non-profit public interest organization whose mission is to promote the rule of law, protect due process, and defend equal protection under the Constitution. To that end, Liberty Legal Foundation has represented parties and submitted *amicus* briefs in courts across the country in cases concerning a variety of issues including constitutional questions and election law.

This case presents legal questions central to the administration of federal election law and to Liberty Legal's ongoing election-related work. Liberty Legal Foundation and its Maryland supporters are vitally concerned with the outcome because it affects the integrity and security of federal elections.

Liberty Legal Foundation's perspective will aid the Court's consideration of the issues raised in this appeal. The brief is desirable because it does more than reinforce the government's textual reading: it supplies an independent constitutional, institutional, historical, and practical enforcement perspective. The *amicus* brief will assist the Court because it addresses matters materially distinct from, and complementary to, the United States' opening brief.

The United States' brief principally advances a statutory argument: Maryland's statewide voter-registration list ("SVRL") is a covered "record[] or paper[]" because an election officer may "come into . . . possession" of a record the officer or the officer's office created; the Attorney General's written demand sufficiently stated its basis and purpose; Title III permits production without redactions; and state privacy law cannot displace federal law. The proposed *amicus* brief does not duplicate that presentation. It contributes four related perspectives that the United States' opening brief does not develop as independent grounds for understanding the case:

A. <u>Constitutional structure and the enforcement-veto problem</u>. The *amicus* brief explains how the Elections Clause and Supremacy Clause bear on the statutory question. Congress may make or alter state regulations governing congressional

elections. Once Congress enacted Title III[1], the National Voter Registration Act ("NVRA")[2] and Help America Vote Act ("HAVA")[3], Maryland remained responsible for administering its election system, but it could not convert exclusive custody of the official statewide system into a practical veto over federal inspection. The brief explains that an interpretation permitting a state to retain exclusive control over the only operative record of compliance, deny federal access to that record, and then require the United States to prove noncompliance without it creates an enforcement structure inconsistent with Congress's paramount authority over federal elections.

B. The central-system and "evidentiary blackout" problem. The proposed brief explains why the SVRL differs in kind from a collection of individual registration applications or a public-facing voter file. HAVA requires a single, uniform, official, centralized, interactive computerized list that serves as the official list for conducting federal elections. 52 U.S.C. § 21083(a)(1)(A). That list is the operational repository showing how the State processes, maintains, merges, cancels, verifies, and updates registration records over time. The *amicus* brief demonstrates that access to isolated inputs or public extracts does not permit meaningful examination of list-maintenance decisions. Excluding the centralized official system

---

[1] Pub. L. No. 86-449, title III, 74 Stat. 86, 88–89 (codified at 52 U.S.C. 20701–20706). "Title III" and "CRA" are used interchangeably.
[2] Pub. L. No. 103-31, 107 Stat. 77 (codified as amended at 52 U.S.C. 20501–20511).
[3] Pub. L. No. 107-252, 116 Stat. 1666 (codified at 52 U.S.C. 20901–21145).

from Title III would allow a state to supply source documents while withholding the record that shows what the state actually did with them.

C. The distinct practical consequences of excluding electronic, State-maintained systems. The United States persuasively argues that the phrase "come into . . . possession" encompasses internally generated records. The proposed brief supplements that argument by examining the practical and technological consequence of the contrary construction: it creates a technology-based safe harbor. Under the district court's rule, the more effectively a state modernizes, centralizes, and electronically maintains the voter registration system federal law requires, the more effectively it can place that official record beyond the Attorney General's inspection power. The *amicus* brief explains why Title III should not be read to make its protection turn on whether voter-registration information is preserved in paper files or in a statewide computerized system.

D. Historical and enforcement-function context. The proposed brief further explains that Title III responded to a recurring enforcement problem: election authorities controlled the records necessary to determine whether registration laws were being administered lawfully. It applies that history to a modern statewide computerized registration list. The brief emphasizes that Title III is an investigative mechanism; it does not require the Attorney General to prove the substantive violation before gaining access to the operative record necessary to investigate

whether a violation occurred. That perspective clarifies the circularity of requiring the DOJ to identify specific improper registrations or actions while the State retains exclusive control over the system capable of confirming or disproving those concerns.

The amicus brief also addresses why meaningful access to the official statewide system protects all qualified voters. It permits the detection of ineligible or duplicate registrations that may remain on a list, while also permitting examination of erroneous removals, cancellations, merges, or unequal treatment that may burden qualified voters. The proposed brief therefore supplies a nonparty, public interest perspective on the institutional consequences of the statutory construction at issue.

Liberty Legal Foundation's brief does not repeat the arguments of Plaintiff-Appellant but elaborates on the issues to draw the court's attention to law that might otherwise escape consideration. The matters presented are directly relevant to whether the district court correctly held that the SVRL falls outside Title III solely because State officials create and continuously update it. The proposed brief supports the United States' requested disposition: reversal and remand with instructions to compel Maryland to make the complete, unredacted SVRL available for inspection under 52 U.S.C. § 20703.

The proposed brief does not seek to expand the issues on appeal. It addresses the same dispositive question presented by the parties: whether the official statewide voter-registration list is a Title III record subject to the Attorney General's written demand. It assists the Court by placing that issue in its constitutional, statutory, historical, and real-world enforcement context.

Wherefore, Liberty Legal Foundation respectfully strongly urges this Court to reverse the District Court of Maryland's decision so the United States can obtain records necessary to enforce federal election law.

Liberty Legal Foundation's *amicus* brief is filed in compliance with the requirements of Fed. R. App. P. 32.

Dated: August 17, 2026

Respectfully submitted,

/s/ Ronald D. Coleman
Ronald D. Coleman
COLEMAN LAW FIRM, PC
50 Park Place
Newark, New Jersey 07201
973-264-9611
rcoleman@colemanlaw-pc.com

Stacey Bucci
LIBERTY LEGAL FOUNDATION
P.O. Box 443
Bennington, Vermont 05201
518-407-3020
stacey@libertylegalusa.org

Counsel for *Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

**with type volume limit, typeface requirements and type-style requirements**

This motion complies with type-volume limit of limitation of the Federal Rule of Appellate Procedure 27(d)(2) because it contains 1,192 words.

In accordance with Federal Rule of Appellate Procedure 27(d)(1)(E), this motion compliance with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in a 14-point Time New Roman font.

/s/ Ronald D. Coleman
RONALD D. COLEMAN

# CERTIFICATE OF SERVICE

I, Ronald D. Coleman, hereby certify that on August 17, 2026, the foregoing document was filed electronically using the Court's CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Ronald D. Coleman
RONALD D. COLEMAN