No. 26-1878

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

**THE UNITED STATES OF AMERICA,**

*Plaintiff-Appellant*,

**v.**

**JARED DEMARINIS,** *et al.*,

*Defendants-Appellees.*

---

On Appeal from the United States District Court for the District of Maryland
(Stephanie A. Gallagher, District Judge)

---

**BRIEF OF APPELLEE JARED DEMARINIS**

---

ANTHONY G. BROWN
Attorney General of Maryland

DANIEL M. KOBRIN
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
dkobrin@oag.maryland.gov
(410) 576-6472
(410) 576-6955 (facsimile)

September 30, 2026

Attorneys for Appellee Jared DeMarinis, Maryland State Administrator of Elections

# TABLE OF CONTENTS


Page

INTRODUCTION .......... 1

JURISDICTIONAL STATEMENT .......... 3

ISSUES PRESENTED FOR REVIEW .......... 4

STATEMENT OF THE CASE .......... 4

Federal Law Governing Election Records and Voter Registration .......... 4

Maryland Law Governing Voter Registration Records .......... 8

The Department of Justice Demands Maryland's Voter Registration Database .......... 10

The District Court Dismisses the Government's Complaint .......... 12

SUMMARY OF ARGUMENT .......... 14

ARGUMENT .......... 15

I. THIS COURT MAY AFFIRM THE JUDGMENT FOR ANY REASON FAIRLY SUPPORTED BY THE RECORD. .......... 15

II. TITLE III DOES NOT AUTHORIZE THE DEPARTMENT OF JUSTICE TO DEMAND AN ENTIRE COMPUTERIZED VOTER REGISTRATION DATABASE. .......... 15

A. A Voter Database Under HAVA Does Not "Come Into" the State Administrator's Possession. .......... 16

B. The Voter Database Required by HAVA Is Not a Record of a Specific Election. .......... 21

C. Applying Title III to a State's Computerized Voter Registration Database Would Bring Title III into Conflict with Other Laws. .......... 24

CONCLUSION .......... 26

REQUEST FOR ORAL ARGUMENT .......... 27

CERTIFICATE OF COMPLIANCE ....................................................................27

TEXT OF PERTINENT PROVISIONS ..................................................................28

# TABLE OF AUTHORITIES

Page

## Cases

*Alvarez Ronquillo v. Bondi*, 151 F.4th 522 (4th Cir. 2025)....................................16

*American Petroleum Inst. v. Cooper*, 718 F.3d 347 (4th Cir. 2013) .......................20

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)............................15

*Federal Commc'ns Comm'n v. AT&T*, 608 U.S. 531 (2026) .................................16

*Figueroa v. Butterball, LLC*, 164 F.4th 312 (4th Cir. 2026) ..................................15

*Fischer v. United States*, 603 U.S. 480 (2024) .......................................................18

*Honeycutt v. United States*, 581 U.S. 443 (2017) ..................................................17

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ....................................................19

*Lozano v. Montoya Alvarez*, 572 U.S. 1 (2014).......................................................20

*Pharmaceutical Coal. for Patient Access v. United States*, 126 F.4th 947 (4th Cir. 2026) .........................................................................................................................21

*Public Int. Legal Found. v. North Carolina State Bd. of Elections*, 996 F.3d 257 (4th Cir. 2021) ...............................................................................................16

*Ray v. Roane*, 948 F.3d 222 (4th Cir. 2020) ...........................................................15

*Redeemed Christian Church of God (Victory Temple) Bowie, Md. v. Prince George's County*, 17 F.4th 497 (4th Cir. 2021) ..................................................16

*Smiley v. Holm*, 285 U.S. 355 (1932) ......................................................................15

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966) ................................................5

*Tankersley v. Almand*, 837 F.3d 390 (4th Cir. 2016) ..............................................16

*United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ...........19

*United States v. Adams*, ___ F. Supp. 3d ___, 2026 WL 2123871 (E.D. Ky. July 23, 2026)..................................................................................................2, 3

*United States v. Aguilar*, No. 3:25-CV-00728-ART-CLB, 2026 WL 2364502 (D. Nev. Aug. 14, 2026) ........ 2, 3, 17, 25

*United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026) ........ 2

*United States v. Bellows*, 834 F. Supp. 3d 113 (D. Me. 2026) ........ 2, 3

*United States v. Benson*, 179 F.4th 470 (6th Cir. 2026) ........ 3, 17, 20, 24

*United States v. Benson*, 187 F.4th 462 (6th Cir. 2026) ........ 22, 25

*United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026) ........ 2, 3, 18

*United States v. Board of Elections of N.Y.*, No. 1:25-CV-1338-MAD/PJE, 2026 WL 1999921 (N.D.N.Y. July 10, 2026) ........ 3

*United States v. Caldwell*, No. 3:26-CV-02025-ZNQ/JTQ, 2026 WL 2186515 (D.N.J. July 29, 2026) ........ 2, 3

*United States v. DeMarinis*, No. 1:25-CV-03934-SAG, 2026 WL 1780586 (D. Md. June 18, 2026) ........ 3

*United States v. Evans*, No. 1:25-CV-04403, 2026 WL 2267774 (D.D.C. Aug. 6, 2026) ........ 2, 3, 25

*United States v. Fontes*, 832 F. Supp. 3d 944 (D. Ariz. 2026) ........ 2, 3, 18

*United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass. 2026) ........ 2

*United States v. Gradwell*, 243 U.S. 476 (1917) ........ 15

*United States v. Griswold*, No. 1:25-CV-03967-PAB-TPO, 2026 WL 2235374 (D. Colo. Aug. 3, 2026) ........ 2, 3, 25

*United States v. Hanzas*, No. 2:25-CV-00903, 2026 WL 2754349 (D. Vt. Sept. 17, 2026) ........ 2, 3, 25

*United States v. Hobbs*, No. 3:25-CV-06078-KKE, 2026 WL 2833713 (W.D. Wash. Sept. 22, 2026) ........ 2, 3

*United States v. Koski*, No. 3:26-CV-00042-RCY, 2026 WL 2032532 (E.D. Va., July 14, 2026) ........ 2, 3, 16

*United States v. Matthews*, ___ F. Supp. 3d. ___, 2026, WL 2212877 (C.D. Ill. July 31, 2026) .......... 2, 20

*United States v. Oliver*, No. 1:25-CV-01193-JCH-JFR, 2026 WL 2031479 (D.N.M., July 14, 2026) .......... 2

*United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026) .......... 2

*United States v. Powell*, 379 U.S. 48 (1964) .......... 13

*United States v. Scanlan*, ___ F. Supp. 3d. ___, 2026 WL 1864054 (D.N.H. June 29, 2026) .......... 2, 3

*United States v. Schmidt*, 835 F. Supp. 3d 697 (W.D. Penn. 2026) .......... 2, 3

*United States v. Simon*, No. 1:25-CV-03761-KMM/EMB, 2026 WL 2389778 (D. Minn. Aug. 17, 2026) .......... 2, 3

*United States v. Thomas*, No. 3:26-CV-00021-KAD, 2026 WL 2070437 (D. Conn., July 17, 2026) .......... 2, 3

*United States v. Warner*, ___ F. Supp. 3d. ___, 2026 WL 2018877 (S.D.W.V. July 13, 2026) .......... 2, 19

*United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026) .......... 2, 19

*United States v. Wisconsin Elections Comm'n*, 833 F. Supp. 3d 949 (W.D. Wisc. 2026) .......... 2, 3

**Constitutional Provisions**

U.S. Const. art. I, § 4 .......... 15

**Statutes**

6 U.S.C. § 1502 .......... 20

7 U.S.C. § 12 .......... 20

18 U.S.C. § 1703 .......... 20

18 U.S.C. § 3500 .......... 20

28 U.S.C § 1331 ....................3
28 U.S.C. § 1291 ....................3
28 U.S.C. § 1345. ....................3
49 U.S.C. § 47124a ....................20
50 U.S.C. § 217 ....................20
52 U.S.C. § 20507 ....................7, 24
52 U.S.C. § 20510 ....................7
52 U.S.C. § 20701 .................... passim
52 U.S.C. § 20702 .................... 6, 24, 25
52 U.S.C. § 20703 ....................6
52 U.S.C. § 20705 ....................6
52 U.S.C. § 21083 .................... passim
52 U.S.C. § 21085 ....................8
52 U.S.C. § 21111 ....................8
2009 Md. Laws Ch. 445 ....................10
Md. Code Ann., Cts. & Jud. Proc., § 3-2303 (LexisNexis 2020) .................... 25, 26
Md. Code Ann., Elec. Law § 10-310 (LexisNexis 2022) ....................10
Md. Code Ann., Elec. Law § 1-101 (LexisNexis 2022) .................... 10, 24
Md. Code Ann., Elec. Law § 9-404 (LexisNexis 2022) ....................10
Md. Code Ann., Elec. Law § 3-101 (LexisNexis 2022) .................... passim
Md. Code Ann., Elec. Law § 3-302 (LexisNexis 2022) ....................23
Md. Code Ann., Elec. Law § 3-305 (LexisNexis 2022) ....................23
Md. Code Ann., Elec. Law § 3-306 (LexisNexis 2022) ....................24
Md. Code Ann., Elec. Law § 3-506 (LexisNexis 2022) ....................9
Md. Code Ann., Elec. Law § 5-301 (LecisNexis 2022) ....................22
Md. Code Ann., Elec. Law § 6-207 (LexisNexis 2022) ....................22
Md. Code Ann., State Gov't § 7-303 (LexisNexis 2021) .................... 25, 26

N.C.G.S.A. § 163-82.10(e) ....................................................................25
S.C. Code § 16-25-130....................................................................................25
The Civil Rights Act of 1957, Pub. L. No. 85-315, 71 Stat. 634 (Sept. 9, 1957) .....5
Va. Code Ann., § 2.2-515.2 ..............................................................................25
West Va. Code § 48-28A-105...........................................................................25

**Regulations**

COMAR 33.03.01.05 .........................................................................................10
COMAR 33.03.02.01B .......................................................................................9
COMAR 33.06.05.02 .........................................................................................22

**Miscellaneous**

106 Cong. Rec. 5,326 (1960)...............................................................................6
Black's Law Dictionary, *Entry for "Receive"* (12th ed. 2024)...............................16
Brennan Center for Justice, *Tracker of Justic Department Requests for Voter Information* (last updated Sept. 23, 2026)...........................................................1
H.R. Rep. No. 86-956 (1959)................................................................................5
U.S. Comm'n on Civil Rights, *Report of the United States Commission on Civil Rights* (Sept. 9, 1959) ...........................................................................................5
U.S. Election Assistance Comm'n, *Voter Lists: Registration, Confidentiality, and Voter List Maintenance* (last updated Dec. 23, 2025).........................................25
U.S. Election Assistance Comm'n, *Errata Note: 2024 EAVS Comprehensive Report and Accompanying Dataset* available at https://tinyurl.com/mrx7v3aj (Feb. 12, 2026)......................................................................................... 11

No. 26-1878

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**THE UNITED STATES OF AMERICA,**

*Plaintiff-Appellant*,

v.

**JARED DEMARINIS,** *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court for the District of Maryland
(Stephanie A. Gallagher, District Judge)

**BRIEF OF APPELLEE**

## INTRODUCTION

In May 2025, the United States ("Government"), through its Department of Justice ("DOJ"), began sending letters to election officials in at least 40 States making escalating demands that they produce voter registration databases.[1] The

[1] Brennan Center for Justice, *Tracker of Justic Department Requests for Voter Information*, accessible at https://tinyurl.com/mwnptmdk (last updated Sept. 23, 2026)

Government has now sued 30 States and the District of Columbia, in courts across the country, demanding copies of unredacted voter databases and without explaining its intended use for this data. Each lawsuit has included a claim, identical to the one alleged in this case, that DOJ is entitled to demand a State's unredacted voter registration database under Title III ("Title III") of the Civil Rights Act of 1960, codified at 52 U.S.C. §§ 20701–20706. To date, 25 of the Government's 31 complaints have been dismissed on the merits.[2] Nineteen of those 25 courts have

[2] *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026); *United States v. Galvin*, 830 F. Supp. 3d 122 (D. Mass. 2026); *United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026); *United States v. Fontes*, 832 F. Supp. 3d 944 (D. Ariz. 2026); *United States v. Wisconsin Elections Comm'n*, 833 F. Supp. 3d 949 (W.D. Wisc. 2026); *United States v. Bellows*, 834 F. Supp. 3d 113 (D. Me. 2026); *United States v. Schmidt*, 835 F. Supp. 3d 697 (W.D. Penn. 2026); *United States v. Matthews*, ___ F. Supp. 3d. ___, 2026, WL 2212877 (C.D. Ill. July 31, 2026); *United States v. Adams*, ___ F. Supp. 3d ___, 2026 WL 2123871 (E.D. Ky. July 23, 2026); *United States v. Warner*, ___ F. Supp. 3d. ___, 2026 WL 2018877 (S.D.W.V. July 13, 2026); *United States v. Scanlan*, ___ F. Supp. 3d. ___, 2026 WL 1864054 (D.N.H. June 29, 2026); *United States v. Hanzas*, No. 2:25-CV-00903, 2026 WL 2754349 (D. Vt. Sept. 17, 2026); *United States v. Hobbs*, No. 3:25-CV-06078-KKE, 2026 WL 2833713 (W.D. Wash. Sept. 22, 2026); *United States v. Simon*, No. 1:25-CV-03761-KMM/EMB, 2026 WL 2389778 (D. Minn. Aug. 17, 2026); *United States v. Aguilar*, No. 3:25-CV-00728-ART-CLB, 2026 WL 2364502 (D. Nev. Aug. 14, 2026); *United States v. Evans*, No. 1:25-CV-04403, 2026 WL 2267774 (D.D.C. Aug. 6, 2026); *United States v. Griswold*, No. 1:25-CV-03967-PAB-TPO, 2026 WL 2235374 (D. Colo. Aug. 3, 2026); *United States v. Caldwell*, No. 3:26-CV-02025-ZNQ/JTQ, 2026 WL 2186515 (D.N.J. July 29, 2026); *United States v. Thomas*, No. 3:26-CV-00021-KAD, 2026 WL 2070437 (D. Conn., July 17, 2026); *United States v. Oliver*, No. 1:25-CV-01193-JCH-JFR, 2026 WL 2031479 (D.N.M., July 14, 2026); *United States v. Koski*, No. 3:26-CV-00042-RCY, 2026 WL 2032532 (E.D. Va., July 14, 2026); *United States v. Board of Elections of N.Y.*, No. 1:25-CV-1338-MAD/PJE,

ruled that Title III does not apply to compel the disclosure of the computerized voter registration database a State must maintain under the Help America Vote Act of 2002, codified at 52 U.S.C. §§ 20901—21145 ("HAVA").[3] One judgment of dismissal based on the inapplicability of Title III has already been affirmed on appeal.[4] No court at either the district or appellate level has ruled in the Government's favor.

## JURISDICTIONAL STATEMENT

The Government filed this action on December 1, 2025, seeking declaratory and injunctive relief against the Maryland State Administrator of Elections, Jared DeMarinis. (J.A. 26.) The district court had subject matter jurisdiction under 28 U.S.C §§ 1331 and 1345. The Government noted an appeal on July 6, 2026. (J.A.

---

2026 WL 1999921 (N.D.N.Y. July 10, 2026); *United States v. DeMarinis*, No. 1:25-CV-03934-SAG, 2026 WL 1780586 (D. Md. June 18, 2026).

[3] *Benson*, 819 F. Supp. 3d at 770; *Fontes*, 832 F. Supp. 3d at 951, 954; *Wisconsin Elections Comm'n*, 833 F. Supp. 3d at 955; *Bellows*, 834 F. Supp. 3d at 123; *Schmidt*, 835 F. Supp. 3d at 699; *Matthews*, ___ F. Supp. 3d at ___, 2026 WL 2212877, at *4; *Adams*, ___ F. Supp. 3d at ___, 2026 WL 2123871, at *5; *Scanlan*, ___ F. Supp. 3d. at ___, 2026 WL 1864054, at *6; *Hanzas*, 2026 WL 2754349, at *5; *Hobbs*, 2026 WL 2833713, at *6; *Simon*, 2026 WL 2389778, at *11; *Aguilar*, 2026 WL 2364502, *5; *Evans*, 2026 WL 2267774, *11; *Griswold*, 2026 WL 2235374, at *5; *Caldwell*, 2026 WL 2186515, at *8; *Thomas*, 2026 WL 2070437, at *7; *Koski*, 2026 WL 2032532, *6; *Board of Elections of N.Y.*, 2026 WL 1999921, at *11; *United States v. DeMarinis*, 2026 WL 1780586, at *5.

[4] *United States v. Benson*, 179 F.4th 470, 480-81 (6th Cir. 2026).

196.) This Court has appellate jurisdiction under 28 U.S.C. § 1291 to review the final judgment of the district court.

## ISSUES PRESENTED FOR REVIEW

1. Is Title III inapplicable to compel the disclosure of the computerized voter registration database a State must establish and maintain under HAVA because the database is neither a record of a specific election nor does it "come into" the possession of the State, as Title III requires?

2. If Title III is applicable to a computerized voter registration database, was DOJ's written demand for its disclosure nonetheless insufficient because it failed to include the requisite "statement of the basis and the purpose" for the demand?

3. Was DOJ's demand to obtain a system of voter registration records unlawful because DOJ failed to first comply with the notice requirements of the Privacy Act?

## STATEMENT OF THE CASE

### Federal Law Governing Election Records and Voter Registration

Congress has enacted three pertinent laws governing election records and the administration of voter registration: Title III, HAVA, and the National Voter Registration Act of 1993 ("NVRA"), codified at 52 U.S.C. §§ 20501–20511. Title III governs the retention of records related to an election. Congress enacted Title III

in response to the shortcomings of the Civil Rights Act of 1957, which, among other things, created the Commission on Civil Rights, granted it authority to investigate deprivations of the "right to vote and have that vote counted by reason of [a person's] color, race, religion, or national origin," and empowered the United States Attorney General to seek injunctive relief against deprivations of the right to vote. Pub. L. No. 85-315, 71 Stat. 634, 635-37 (Sept. 9, 1957). The 1957 law, though, did not require States to maintain voting records or make such records available for inspection. Both the Commission and Attorney General were thus thwarted in their respective statutory tasks by state officials' failures to retain or produce the necessary election records. U.S. Comm'n on Civil Rights, *Report of the United States Commission on Civil Rights* at 70, 93, 98, 137 (Sept. 9, 1959); *see also* H.R. Rep. No. 86-956 at 7 (1959).

Title III sought to eliminate this obstacle blocking the Commission's and Attorney General's roles. *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). It requires an "officer of election" to "retain and preserve" all "records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. The records must be retained "for a period of twenty-two months from the date" of the federal election to which the records relate. *Id.* Any theft, destruction, concealment,

mutilation, or alteration of a retained record is likewise punishable by up to a $1,000 fine, one year in prison, or both. *Id*. at § 20702.

The Attorney General may make a "demand in writing" for a record retained under Title III. 52 U.S.C. § 20703. Congress intended that the Attorney General use that authority to investigate violations of constitutional rights, but some members, including Florida Congressman William Cramer, were concerned about DOJ using the powers granted by Title III for "fishing expedition[s]." 106 Cong. Rec. 5,326 (1960). To address these concerns, Congress adopted Rep. Cramer's amendment to Title III, which added a requirement that the Attorney General's demand for records include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703; *see also* 106 Cong. Rec. 5,326 (1960). Congress authorized judicial review over statements of basis and purpose by specifying that "[t]he United States district court for the district in which a demand is made pursuant to [Section 20703] of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705.

Thirty-three years after enacting the Title III election-record-retention requirements, Congress enacted the NVRA to provide minimum standards for the administration of voter registration. One such standard is the requirement that a State "conduct a general program that makes a reasonable effort" to remove

registered voters from a voter registration list when the voter dies or moves out of the registrar's jurisdiction. 52 U.S.C. § 20507(a)(4). While States retain the discretion to design and establish their own "reasonable" programs, the NVRA provides a safe harbor provision through which the "reasonable efforts" standard is met. *See id.* at § 20507(c)(1).

The NVRA imposes a two-year record retention requirement apart from Title III that focuses on voter registration programs. States must maintain and make available for public inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.* at § 20507(i).

Enforcement of the NVRA is left to both the Attorney General and the public, who may sue for declaratory and injunctive relief to enforce a provision of the law. 52 U.S.C. § 20510(a), (b). Neither, however, is granted any audit or investigative authority to obtain voter registration records beyond that provided in the two-year record retention provision at 52 U.S.C. § 20507(i).

Over forty years after enacting Title III, Congress enacted HAVA to provide minimum operational requirements for voting systems and voter registration systems. 52 U.S.C. §§ 21081–21085. HAVA requires a State to maintain its voter registration data in "a single, uniform, official, centralized, interactive computerized statewide voter registration" database that is administered at the state level. 52

U.S.C. § 21083(a)(1)(A). The "computerized" database must serve as the exclusive voter roll for the conduct of "all election for Federal office in the State." *Id.* at § 21083(a)(1)(A)(viii). Election officials at the state and local level are required to work cooperatively and expeditiously to ensure that voter records are updated in response to any new information obtained about a voter or registrant. *Id.* at § 21083(a)(1)(A)(v)–(vii). To that end, the computerized voter database must be "coordinated with other agency databases within the State." *Id.* at § 21083(a)(1)(A)(iv). For all these requirements, implementation is left to the State's discretion. *Id.* at § 21085.

HAVA limits enforcement of its operational standards to the Attorney General, who is authorized to sue for declaratory or injunctive relief. 52 U.S.C. § 21111. HAVA requires retention of records, and authorizes audits of those records, for federal payments made to States under the law's election administration improvement grant programs. *See* 52 U.S.C. §§ 20901–20906. But HAVA contains no record retention or audit provisions related to the Attorney General, or to the operational standards imposed on voter registration systems and voting systems.

**Maryland Law Governing Voter Registration Records**

Section 3-101 of the Maryland Code, Election Law Article (LexisNexis 2022) implements the HAVA requirement for a central, computerized voter registration database. The Maryland database acts as the "official voter registration list for the

State," is coordinated with other state agency databases, and is updated on a continual basis. Elec. Law § 3-101(b) and (d). The State Administrator "define[s], maintain[s], and administer[s]," the database, and works alongside local boards of election to "ensure" its "currency and accuracy." *Id.* at § 3-101(c). In that effort, the State Administrator gathers information about registrants and voters from a range of governmental sources, *see id*. at § 3-504, and transmits it to local election officials who process the data and enter it into the database at the State Administrator's instruction, *id*. at § 3-101(c)(3).

The general public does not have routine access to the State's voter registration database, *see* 52 U.S.C. § 21083(a)(3); instead, State law separately provides for the public provision of "[a] copy of a list of registered voters" upon written request. Elec. Law § 3-506 (a). The format and information contained within the publicly available list is determined by the State Board. *Id.* at § 3-506(a)(2); *see also* Md. Code Regs. ("COMAR") 33.03.02.01B (defining the information available on the publicly available voter registration lists). The publicly available list, though, may not disclose addresses made confidential by an address confidentiality program. Elec. Law § 3-506(a)(2)(v).

Because the computerized voter registration database must be secured and updated continuously, election officials cannot use it directly in polling places to conduct voting operations during an election. Instead, the computerized voter

registration database is "used" to "produce precinct registers." Elec. Law § 3-101(b)(5). A precinct register, or an "election register,"[5] is a "list of voters eligible to vote" in either a precinct on election day or in a specific county's early voting center during early voting. Elec Law § 1-101(x). Election judges use these registers to verify voter eligibility in polling places and early voting centers, authorizing them to cast ballots in an election. *Id.* at § 10-310(a)(1). If a person's name does not appear on a register, and they are not an inactive voter, the person is only permitted to vote a provisional ballot. *Id.* at § 10-310(a)(2)(ii); *see also* Elec Law § 9-404(b)(2). Precinct registers must be retained as an "election-related record" in compliance with applicable federal laws. COMAR 33.03.01.05A(2)(f) and B(2).

**The Department of Justice Demands Maryland's Voter Registration Database**

On July 14, 2025, DOJ transmitted a letter to the State Administrator seeking information about Maryland's compliance with the NVRA's "list maintenance" provisions. (J.A. 35.)[6] The letter requested information about election personnel

[5] In 2009, the Maryland General Assembly revised the term "precinct register" to "election register" in response to the adoption of early voting in the State. 2009 Md. Laws Ch. 445, §§ 1 and 3. The terms are operationally interchangeable.

[6] Also pending before this Court are appeals arising from DOJ's demands for databases from Virginia (*United States v. Koski*, No. 26-2002) and West Virginia (*United States v. Warner*, No. 26-2262).

responsible for Maryland's list-maintenance program and statistics reported in the 2024 Election Administration and Voting Survey. (J.A. 35-37.)

The letter further "request[ed]" a "*current* electronic copy" of the computerized, statewide voter registration database required by HAVA. (J.A. 35 (emphasis added)). Alongside the list, the State Administrator was to provide materials that explained "how a voter record is coded into the statewide voter registration list and reported in the electronic copy," such as a "database user manual" or "coding list." (J.A. 35-36.)

The State Administrator responded on July 30, 2025. (J.A. 39.) His letter clarified Maryland's "list maintenance" processes and directed the recipient to pertinent sources of information explaining the statistics and findings that had been questioned. (J.A. 39-42.)[7] In response to the voter registration database request, the State Administrator directed DOJ to Maryland's public-facing portal to request copies of the State's public voter registration list. (J.A. at 41.) DOJ could obtain "publicly-available data in the statewide voter registration list" by submitting a standard request through that portal. (J.A. at 41.)

---

[7] The Election Assistance Commission also revised its report in February 2026, addressing some of the statistics DOJ had questioned. U.S. Election Assistance Comm'n, *Errata Note: 2024 EAVS Comprehensive Report and Accompanying Dataset* available at https://tinyurl.com/mrx7v3aj (Feb. 12, 2026)

DOJ responded by letter dated August 18, 2025. (J.A. 46.) It declined the offer of publicly available data and twice specified that the Government sought production of Maryland's "current" voter registration database containing "*all fields*, which includes the registrant's full name, date of birth, residential address, and his or her state driver's license number or the last four digits of the registrant's social security number." (J.A. 46-47, 48, n. 2.) The letter offered that its demand for a current, unredacted voter registration database was made "pursuant" to the Attorney General's authority "to bring enforcement actions" under the NVRA, its authority to bring "actions to enforce" under HAVA, and its authority to request election records under Title III. (J.A. 47.) For the Title III authority, the letter further offered that the "purpose of the request is to ascertain Maryland's compliance with the list maintenance requirements of the NVRA and HAVA." (J.A. 47.)

By responsive letter one week later, the State Administrator declined to provide a current, unredacted voter registration database. (J.A. 49.)

**The District Court Dismisses the Government's Complaint**

The Government initiated this civil action against the State Administrator by filing a complaint in the district court on December 1, 2025. (J.A. 26.) In a single count, the complaint alleged that the State Administrator violated Title III and sought injunctive relief ordering disclosure of a "current" electronic copy of Maryland's computerized voter registration database. (J.A. 32, 33.) Alongside its complaint,

the Government also filed a motion that sought to "compel[]" the State Administrator to produce an unredacted database. (ECF 2 at 1-2.) The Government argued in the motion that Title III entitled it to have its written demand compelled through a "special" and "summary" proceeding in which it need only produce "a simple statement" describing the demand. (ECF 2-1 at 13-14.) For this special proceeding, the Federal Rules of Civil Procedure were "displace[d]" by Title III. (ECF 2-1 at 13.) The State Administrator and both sets of Intervenor-Defendants separately filed motions to dismiss and oppositions to the Government's motion to compel. (J.A. 78, 81, 114, 159.)

After a hearing, the district court issued a memorandum opinion and order dismissing the Government's complaint with prejudice. (J.A. 1, 11.) The court first ruled that, under *United States v. Powell*, 379 U.S. 48 (1964), the language in Title III conferring jurisdiction "by appropriate process" did not create a special statutory proceeding at which the Rules of Civil Procedure were inapplicable. (J.A. 6.) On the merits, the court reasoned that the plain language of Title III—requiring disclosure of records that "come into [the] possession" of an officer of election—could not be read to apply to a computer database created and maintained by the State. (J.A. 7-8.) The district court further recognized that applying Title III to a computerized voter registration database would bring Title III's criminal prohibition against altering any record of election into conflict with requirements in HAVA and

the NVRA to consistently update and revise voter records. (J.A. 8.) The district court therefore concluded that the State's dynamic, computerized voter registration database was not a "record or paper" of an election compelled for disclosure by the 60-year-old civil rights statute and dismissed the complaint with prejudice. (J.A. 9-10.)

## SUMMARY OF ARGUMENT

The persistent, computerized voter registration database that a State must maintain under HAVA is not a Title III "election record[]" (J.A. 32), i.e., a record of a specific election. The database does not "come into [the] possession" of the State Administrator because it is necessarily established and maintained by the State. The computerized system required by HAVA is dynamic and continual, not tied to a singular election. And the criminal penalties for altering or destroying election records would conflict directly with the congressional demands in HAVA and the NVRA to continuously change and update voter registration records. Because Title III cannot reasonably be read to require the maintenance of a persistent voter registration database, DOJ cannot use Title III to compel production of the database.[8]

[8] State Administrator DeMarinis adopts the arguments regarding the sufficiency of DOJ's written demand stated in the brief of Appellee Common Cause, and the arguments regarding DOJ 's failure to abide by the Privacy Act stated in the brief of Appellee Maryland-DC Alliance of Retired Americans.

# ARGUMENT

## I. THIS COURT MAY AFFIRM THE JUDGMENT FOR ANY REASON FAIRLY SUPPORTED BY THE RECORD.

This Court "review[s] a district court's grant of a motion to dismiss *de novo*." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020). It may affirm the dismissal of a complaint "on any basis fairly supported by the record." *Figueroa v. Butterball, LLC*, 164 F.4th 312, 319 (4th Cir. 2026) (quotation omitted).

## II. TITLE III DOES NOT AUTHORIZE THE DEPARTMENT OF JUSTICE TO DEMAND AN ENTIRE COMPUTERIZED VOTER REGISTRATION DATABASE.

States possess the primary authority to "prescribe[]" the time, place, and manner of federal elections. U.S. Const. art. I, § 4. Congress may assume that authority through legislation, *id*., but when it does so, it uses "positive and clear" language to delineate where its mandate stops and the State's authority resumes. *United States v. Gradwell*, 243 U.S. 476, 485 (1917). A State must therefore enact a "complete code" for the conduct of electoral operations, *Smiley v. Holm*, 285 U.S. 355, 366 (1932), including provisions for voter registration, voter roll maintenance, and the protection of voter data, *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-10 (2013). Implementation of that code requires a voluminous collection of data about individual applicants and voters, implicating significant privacy interests. *Public Int. Legal Found. v. North Carolina State Bd. of Elections*, 996

F.3d 257, 266-68 (4th Cir. 2021). Title III must be interpreted considering that constitutional context.

The task of interpreting Title III begins with "the language of the statute itself." *Redeemed Christian Church of God (Victory Temple) Bowie, Md. v. Prince George's County*, 17 F.4th 497, 508 (4th Cir. 2021) (quotation omitted). The statutory terms cannot be interpreted in a vacuum and must instead be read in the context of the overall statutory scheme. *Federal Commc'ns Comm'n v. AT&T*, 608 U.S. 531, 543 (2026). Undefined language in a statute is given its "ordinary meaning unless the context suggests otherwise." *Tankersley v. Almand*, 837 F.3d 390, 395 (4th Cir. 2016) (quotation omitted). And when the plain language produces an unambiguous result, this Court "need look no further." *Alvarez Ronquillo v. Bondi*, 151 F.4th 522, 526 (4th Cir. 2025) (quotation omitted).

### A. A Voter Database Under HAVA Does Not "Come Into" the State Administrator's Possession.

Title III commands an "officer of election" to "retain and preserve . . . all records and papers *which come into his possession*" related to the act of voting. 52 U.S.C. § 20701 (emphasis added). On their face the statutory terms require a measure of receipt in a record's procurement, rather than its wholesale creation. *See* Black's Law Dictionary, *Entry for "Receive"* (12th ed. 2024) ("to come into possession or get from some outside source"). And this understanding was as true when Congress enacted Title III as it is today. *Koski*, 2026 WL 2032532, at *5

(quoting *Benson*, 179 F.4th at 480) ("Around the time that Congress enacted Title III, the phrase 'come into . . . possession,' meant to 'acquire,' 'obtain,' or 'receive,'" rather than something a State "created themselves."); *see also, e.g.*, *Aguilar*, 2026 WL 2364502, at *4; *accord Honeycutt v. United States*, 581 U.S. 443, 449 (2017) (defining "obtain" as "to get or acquire" and "to come into possession of" as a matter of 1960s and contemporary usage (internal quotation marks and citations omitted)). Title III therefore does not require retention of any election record the State Administrator may possess, but requires the retention and preservation only of items that "come into" the possession of the State Administrator—the materials he receives that are predicate to the act of voting.

A HAVA voter registration database does not "come into" the possession of an election official. Just the opposite, HAVA requires that the database originate with the State's chief election official; it is built by the State. *See* 52 U.S.C. § 21083(a)(1)(A) (providing that "each State, acting through the chief State election official, shall implement" a computerized voter registration database). Maryland has done just that, by requiring that its voter registration database be maintained and administered by the State Administrator. Elec. Law § 3-101(c)(1). The State Administrator thus did not "come into" possession of Maryland's database by receiving it from voters; the database is in the State Administrator's possession because his office established it and maintains it. *See Benson*, 179 F.4th at 479 ("[a]n

ordinary English speaker would not say that she has come into possession of something that she created, established, and maintained.")

The types of records to be retained under Title III bolster this conclusion. *See Fischer v. United States*, 603 U.S. 480, 488 (2024) ("The idea is simply that a general phrase can be given a more focused meaning by the terms linked to it.") Of all the records that may "come into" an officer's possession, he must retain and preserve only those "relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. All of the listed statutory qualifiers are items provided by a prospective voter to an election official. *Benson*, 819 F. Supp. 3d at 769; *Fontes*, 832 F. Supp. 3d at 950. Congress could not have intended to require the retention (and disclosure) of a database built by the State from multiple sources of data, *see* 52 U.S.C. § 21083(a)(1)(A)(iv), by mandating the preservation of items specifically delivered by prospective voters into the possession of an election official. Just the opposite, the statute's specification makes clear that Title III was intended to apply to "records and papers" received by election officials in the administration of voting.

The purpose animating congressional enactment of Title III further confirms this understanding. Title III was a "direct response" to state officials "thwarting efforts" by the Commission on Civil Rights and the Attorney General to "investigate whether there was a pattern and practice of disenfranchising Black Americans."

*Weber*, 816 F. Supp. 3d at 1175. Title III was therefore written with specific language to enable investigations into violations of an individual's right to vote. *See Warner*, 2026 WL 2018877 at *7. The enumerated documents passed from prospective voters to election officials were the proof investigators needed to learn, and later demonstrate, that eligible individuals were unjustifiably being denied the right to vote *despite* providing the necessary materials to election officials. The language of Title III was written for a proportionally circumscribed purpose. It was not written as a general auditing tool for a voter roll. *See Kennedy v. Bruce*, 298 F.2d 860, 863 n. 3 (5th Cir. 1962) (removal of ineligible voters from a voter registration list was "a matter which does not bear any particular importance" to a Title III inquiry).

The Government's argument to the contrary—that "come into . . . possession" is "broad enough to cover any document obtained by any means"—runs into interpretive problems. Appellants' Br. 20.[9] "A construction that makes all voting records and papers in the election officers' possession subject to Title III would

[9] The Government's reliance on *United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989), for this point is misguided. Appellant's Br. 21. In *Tax Analysts*, the Court interpreted the meaning of the term "agency records" in the Freedom of Information Act ("FOIA") and concluded that this term included records obtained by the agency as well as those generated internally. 492 U.S. at 145–146. The case did not analyze the term "come into possession" at all. It only used the phrase to describe how a record that "come[s] into the agency's possession in the legitimate conduct of its official duties" is in the agency's "control" and is therefore an "agency record" for FOIA purposes. *Id.*

render 'come into' superfluous." *Benson*, 179 F.4th at 480; *Matthews*, 2026 WL 2212877, at *3 ("If Congress had meant 'come into possession' to simply mean any record existing within the election official's 'possession,' it would not have chosen to include the ostensibly extraneous language."); *see generally American Petroleum Inst. v. Cooper*, 718 F.3d 347, 356 (4th Cir. 2013) (counseling avoidance of interpreting a statute that "may render statutory terms meaningless or superfluous"). Congress regularly uses "in the possession of" when it intends to cover any record or information in an actor's possession, regardless of how the actor obtained it. *See, e.g.*, 6 U.S.C. § 1502(a); 7 U.S.C. § 12(e); 18 U.S.C. § 3500(a) & (b); 49 U.S.C. § 47124a(b)(1). When Congress uses the phrase "come into the possession," it refers to materials received by an actor from a third party. *See* 18 U.S.C. § 1703(a) (prohibiting Postal Service "officer or employee" from tampering with postal materials that "come into his possession"); 50 U.S.C. § 217 (prohibiting member of military or naval service from dealing in captured or abandoned property that "comes into his possession"). Congress's use of "comes into his possession," rather than the alternative, "in his possession," cannot be as easily discarded as the Government asserts. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014) (where legislation selects language over "obvious alternative" the "natural implication" is that they did not intend the alternative).

Nor can there be any argument that the State Administrator came into possession of the voter database by receiving it from a subordinate state official. Appellant's Br. 31-32. A HAVA voter database is not a discrete item passed back-and-forth between election officials. It is a "centralized" system that State and local election officials maintain concurrently. 52 U.S.C. § 20183(a)(1)(A)(v)–(vii); *see also* Elec. Law § 3-101(c). The database does not leave the State Administrator's possession when a local official enters new information into it. And the database does not "come into" the State Administrator's possession every time a record in it is updated by someone other than the State Administrator. To interpret Title III otherwise would require the State Administrator to "retain and preserve" an entire copy of the voter database each time an entry within it is updated in the slightest—an absurd result that Congress could not have intended. *Pharmaceutical Coal. for Patient Access v. United States*, 126 F.4th 947, 961 (4th Cir. 2026) (absurd result is one "demonstrably at odds with the clearly expressed Congressional intent").

### B. The Voter Database Required by HAVA Is Not a Record of a Specific Election.

Title III requires retention of election-specific records. The statute imposes a duty to retain records "for a period of twenty-two months from the date of any general, special, or primary election." 52 U.S.C. § 20701. And the records that must be retained are those that relate to voting "in such election." *Id.* Title III therefore does not create a free-floating requirement to retain operational records generally.

Nor does it create an obligation to retain and preserve records collected for a future election. *See* 52 U.S.C. § 20701 (requiring preservation "for a period of twenty-two months *from* the date of any general, special, or primary election") (emphasis added). Title III creates a recurring duty to preserve the records of a specific election from a specific date. *United States v. Benson*, 187 F.4th 462, 467 (6th Cir. 2026) (Murphy, J. concurring) (denying rehearing en banc).

A computerized voter registration database under HAVA is not a record of a past election. By federal law, it serves as a persistent administrative system "for storing and managing the official list of registered voters." 52 U.S.C. § 21083(a)(1)(A)(i). And HAVA does not allow it to expire after twenty-two months, as Title III permits. *See* 52 U.S.C. § 21083(a). Moreover, while the database acts as "the official voter registration list for the conduct of all elections for Federal office in the State," 52 U.S.C. § 21083(a)(1)(A)(viii), it serves purposes beyond that in the interval between elections.

In Maryland, the computerized voter registration database provides the basis for determining an individual's eligibility to be a candidate in a federal, state, or local election, *see* Elec. Law § 5-301 (b)(1), and for determining the sufficiency of a petition to place a ballot question or candidate on a ballot, *see* Elec. Law § 6-207(a)(2); *see also* COMAR 33.06.05.02B. Where Title III requires retention of records connected to a specific election, the voter registration database in

Maryland (consistent with federal law) is more than that. It is the administrative hub for the conduct of the State's present and future electoral operations.

In any event, DOJ did not demand the type of record covered by Title III. In its first letter to the State Administrator, sent on July 14, 2025, DOJ requested "[t]he *current* electronic copy of Maryland's computerized statewide voter registration list." (J.A. 35 (emphasis added.)) In its written demand, issued on August 18, 2025, DOJ reiterated that it desired "an electronic copy of Maryland's complete and *current* [voter database]." (J.A. 47 (emphasis added.)) And in its pleadings to the district court, filed on December 1, 2025, the Government sought injunctive relief ordering the State Administrator to provide "the *current* electronic copy of Maryland's computerized statewide voter registration list." (J.A. 33 (emphasis added.)) But there were no elections for federal office in July, August, and December of 2025. DOJ therefore sought a record unconnected from an election, pulling its demand outside the purview of Title III.

Nor can Maryland's computerized voter registration database provide a snapshot record of the eligible electorate from a past election, whenever it was requested. Maryland's computerized database is immediately updated with new eligibility information in the days after election day. *See* Elec. Law § 3-302(b) (voter registration materials received immediately before and after election "become effective" in database on the 11th day after election); *see also* Elec. Law §§ 3-305

and 3-306 (permitting changes of address and new voter registration during the early voting period and same-day registration on election day). A snapshot of the electorate eligible to vote in a past election could only be provided by the precinct or election registers produced for the specific election. Elec. Law § 1-101(x).

### C. Applying Title III to a State's Computerized Voter Registration Database Would Bring Title III into Conflict with Other Laws.

Finally, Title III criminalizes conduct that other laws require for voter registration databases. Section 20702 prohibits "[a]ny person" from willfully "destroy[ing]," "mutilat[ing]," or "alter[ing]" any record required by § 20701 for retention and preservation. If Title III requires the retention of a HAVA voter registration database, then § 20702 criminalizes altering or concealing any part of that database.

At the same time, HAVA and the NVRA "require [state] election officials to alter the [voter registration database] routinely as part of their reasonable effort[s] to ensure accuracy." *Benson*, 179 F.4th at 479 (last alteration in original and quotation omitted). Under HAVA, election officials must systematically remove ineligible voters, 52 U.S.C. § 21083(a)(1)(A)(2), and duplicate entries, *id.* at § 21083(a)(1)(B)(iii), from a voter registration database. Under the NVRA, officials must promptly update registration records with new address information. 52 U.S.C. § 20507(c)(1)(B)(i). Congress could not have intended to compel and criminalize

the same conduct between related sets of election statutes. *Benson*, 179 F.4th at 480; *see, e.g.*, *Hanzas*, 2026 WL 2754349, at *5; *Aguilar*, 2026 WL 2364502, at *5; *Evans*, 2026 WL 2267774, at *7; *Griswold*, 2026 WL 2235374, at *5; *Matthews*, 2026 WL 2212877, at *4. Its choice *not* to amend Title III's criminal prohibition when it enacted HAVA and the NVRA evidences its understanding, and intent, that Title III does not apply to computerized voter databases.

Additionally, § 20702 prohibits "conceal[ing]," any record required by § 20701 for retention and preservation. But nearly every State in the country, and all those in this Circuit,[10] maintain address confidentiality programs within their voter registration databases. U.S. Election Assistance Comm'n, *Voter Lists: Registration, Confidentiality, and Voter List Maintenance*, accessible at https://tinyurl.com/y3v34td4 (last updated Dec. 23, 2025). Address confidentiality programs permit individuals, such as survivors of domestic violence, law enforcement personnel, and judicial officers, to have personal contact information

[10] *See* Md. Code Ann., State Gov't § 7-303 (Maryland address confidentiality program survivors of domestic violence and sexual assault); Md. Code Ann., Cts. & Jud. Proc., § 3-2303 (Maryland address confidentiality program for State and federal judicial officers); Va. Code Ann., § 2.2-515.2 (Virginia address confidentiality program for survivors of sexual or domestic violence); S.C. Code § 16-25-130 (South Carolina address confidentiality program for survivors' of domestic or sexual violence use of mail-in ballots); N.C.G.S.A. § 163-82.10(e) (North Carolina address confidentiality program for survivors of domestic or sexual violence); West Va. Code § 48-28A-105 (West Virginia address confidentiality program for survivors of domestic or sexual violence).

hidden from public view because disclosure would create a substantial risk of harm. *See, e.g.*, State Gov't. § 7-303 (Maryland address confidentiality program survivors of domestic violence and sexual assault); Cts. & Jud. Proc. §§ 3-2303 (Maryland address confidentiality program for State and federal judicial officers). Congress could not have intended in 1960, with a measure aimed at aiding the investigation of voting deprivations, to preempt future public safety protections for vulnerable individuals.

## CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Daniel M. Kobrin

DANIEL M. KOBRIN
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
dkobrin@oag.maryland.gov
(410) 576-6472
(410) 576-6955 (facsimile)

Attorneys for Appellee Jared DeMarinis, Maryland State Administrator of Elections

## REQUEST FOR ORAL ARGUMENT

Appellee State Administrator DeMarinis respectfully requests that the Court hear oral argument in this appeal. The State Administrator submits that oral argument would aid the Court in its disposition of this appeal, in which the Government seeks to obtain Maryland's unredacted voter registration database under a novel interpretation of Title III.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 6,138 words, excluding the parts of the brief exempted by Rule 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Daniel M. Kobrin

Daniel M. Kobrin
Assistant Attorney General

# TEXT OF PERTINENT PROVISIONS

**United States Code, Title 52 – Voting and Elections.**
**Chapter 205. National Voter Registration (NVRA).**

**§ 20507. Requirements with respect to administration of voter registration.**

(a) In general

In the administration of voter registration for elections for Federal office, each State shall—

(1) ensure that any eligible applicant is registered to vote in an election—

(A) in the case of registration with a motor vehicle application under section 20504 of this title, if the valid voter registration form of the applicant is submitted to the appropriate State motor vehicle authority not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

(B) in the case of registration by mail under section 20505 of this title, if the valid voter registration form of the applicant is postmarked not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

(C) in the case of registration at a voter registration agency, if the valid voter registration form of the applicant is accepted at the voter registration agency not later than the lesser of 30 days, or the period provided by State law, before the date of the election; and

(D) in any other case, if the valid voter registration form of the applicant is received by the appropriate State election official not later than the lesser of 30 days, or the period provided by State law, before the date of the election;

(2) require the appropriate State election official to send notice to each applicant of the disposition of the application;

(3) provide that the name of a registrant may not be removed from the official list of eligible voters except—

(A) at the request of the registrant;

(B) as provided by State law, by reason of criminal conviction or mental incapacity; or

(C) as provided under paragraph (4);

(4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of—

(A) the death of the registrant; or

(B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d);

(5) inform applicants under sections 20504, 20505, and 20506 of this title of—

(A) voter eligibility requirements; and

(B) penalties provided by law for submission of a false voter registration application; and

(6) ensure that the identity of the voter registration agency through which any particular voter is registered is not disclosed to the public.

(b) Confirmation of voter registration

Any State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office—

(1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.) [now 52 U.S.C. 10301 et seq.]; and

(2) shall not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote, except that nothing in this paragraph may be construed to prohibit a State from using the procedures described in subsections (c) and (d) to remove an individual from the official list of eligible voters if the individual—

(A) has not either notified the applicable registrar (in person or in writing) or responded during the period described in subparagraph (B) to the notice sent by the applicable registrar; and then

(B) has not voted or appeared to vote in 2 or more consecutive general elections for Federal office.

(c) Voter removal programs

(1) A State may meet the requirement of subsection (a)(4) by establishing a program under which—

(A) change-of-address information supplied by the Postal Service through its licensees is used to identify registrants whose addresses may have changed; and

(B) if it appears from information provided by the Postal Service that—

(i) a registrant has moved to a different residence address in the same registrar's jurisdiction in which the registrant is currently registered, the registrar changes the registration records to show the new address and sends the registrant a notice of the change by forwardable mail and a postage prepaid pre-addressed return form by which the registrant may verify or correct the address information; or

(ii) the registrant has moved to a different residence address not in the same registrar's jurisdiction, the registrar uses the notice procedure described in subsection (d)(2) to confirm the change of address.

(2)(A) A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters.

(B) Subparagraph (A) shall not be construed to preclude—

(i) the removal of names from official lists of voters on a basis described in paragraph (3)(A) or (B) or (4)(A) of subsection (a); or

(ii) correction of registration records pursuant to this chapter.

(d) Removal of names from voting rolls

(1) A State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant—

(A) confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or

(B)(i) has failed to respond to a notice described in paragraph (2); and

(ii) has not voted or appeared to vote (and, if necessary, correct the registrar's record of the registrant's address) in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

(2) A notice is described in this paragraph if it is a postage prepaid and pre-addressed return card, sent by forwardable mail, on which the registrant may state his or her current address, together with a notice to the following effect:

(A) If the registrant did not change his or her residence, or changed residence but remained in the registrar's jurisdiction, the registrant should return the card not later than the time provided for mail registration under subsection (a)(1)(B). If the card is not returned, affirmation or confirmation of the registrant's address may be required before the registrant is permitted to vote in a Federal election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice, and if the registrant does not vote in an election during that period the registrant's name will be removed from the list of eligible voters.

(B) If the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered, information concerning how the registrant can continue to be eligible to vote.

(3) A voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with this subsection.

(e) Procedure for voting following failure to return card

(1) A registrant who has moved from an address in the area covered by a polling place to an address in the same area shall, notwithstanding failure to notify the registrar of the change of address prior to the date of an election, be permitted to vote at that polling place upon oral or written affirmation by the registrant of the change of address before an election official at that polling place.

(2)(A) A registrant who has moved from an address in the area covered by one polling place to an address in an area covered by a second polling place within the same registrar's jurisdiction and the same congressional district and who has failed to notify the registrar of the change of address prior to the date of an election, at the option of the registrant—

(i) shall be permitted to correct the voting records and vote at the registrant's former polling place, upon oral or written affirmation by the registrant of the new address before an election official at that polling place; or

(ii)(I) shall be permitted to correct the voting records and vote at a central location within the same registrar's jurisdiction designated by the registrar where a list of eligible voters is maintained, upon written affirmation by the registrant of the new address on a standard form provided by the registrar at the central location; or

(II) shall be permitted to correct the voting records for purposes of voting in future elections at the appropriate polling place for the current address and, if permitted by State law, shall be permitted to vote in the present election, upon confirmation by the registrant of the new address by such means as are required by law.

(B) If State law permits the registrant to vote in the current election upon oral or written affirmation by the registrant of the new address at a polling place described in subparagraph (A)(i) or (A)(ii)(II), voting at the other locations described in subparagraph (A) need not be provided as options.

(3) If the registration records indicate that a registrant has moved from an address in the area covered by a polling place, the registrant shall, upon oral or written affirmation by the registrant before an election official at that polling place that the registrant continues to reside at the address previously made known to the registrar, be permitted to vote at that polling place.

(f) Change of voting address within a jurisdiction

In the case of a change of address, for voting purposes, of a registrant to another address within the same registrar's jurisdiction, the registrar shall correct the voting registration list accordingly, and the registrant's name may not be removed from the official list of eligible voters by reason of such a change of address except as provided in subsection (d).

(g) Conviction in Federal court

(1) On the conviction of a person of a felony in a district court of the United States, the United States attorney shall give written notice of the conviction to the chief State election official designated under section 20509 of this title of the State of the person's residence.

(2) A notice given pursuant to paragraph (1) shall include—

(A) the name of the offender;

(B) the offender's age and residence address;

(C) the date of entry of the judgment;

(D) a description of the offenses of which the offender was convicted; and

(E) the sentence imposed by the court.

(3) On request of the chief State election official of a State or other State official with responsibility for determining the effect that a conviction may have on an offender's qualification to vote, the United States attorney shall provide such additional information as the United States attorney may have concerning the offender and the offense of which the offender was convicted.

(4) If a conviction of which notice was given pursuant to paragraph (1) is overturned, the United States attorney shall give the official to whom the notice was given written notice of the vacation of the judgment.

(5) The chief State election official shall notify the voter registration officials of the local jurisdiction in which an offender resides of the information received under this subsection.

(h) Omitted

(i) Public disclosure of voter registration activities

(1) Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

(2) The records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made.

(j) "Registrar's jurisdiction" defined
For the purposes of this section, the term "registrar's jurisdiction" means—

(1) an incorporated city, town, borough, or other form of municipality;

(2) if voter registration is maintained by a county, parish, or other unit of government that governs a larger geographic area than a municipality, the geographic area governed by that unit of government; or

(3) if voter registration is maintained on a consolidated basis for more than one municipality or other unit of government by an office that performs all of the functions of a voting registrar, the geographic area of the consolidated municipalities or other geographic units.

**§ 20510. Civil enforcement and private right of action.**

(a) Attorney General

The Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter.

(b) Private right of action

(1) A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved.

(2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1), or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

(3) If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).

(c) Attorney's fees

In a civil action under this section, the court may allow the prevailing party (other than the United States) reasonable attorney fees, including litigation expenses, and costs.

(d) Relation to other laws

(1) The rights and remedies established by this section are in addition to all other rights and remedies provided by law, and neither the rights and remedies established by this section nor any other provision of this chapter shall supersede, restrict, or limit the application of the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.) [now 52 U.S.C. 10301 et seq.].

(2) Nothing in this chapter authorizes or requires conduct that is prohibited by the Voting Rights Act of 1965 (42 U.S.C. 1973 et seq.) [now 52 U.S.C. 10301 et seq.].

## Chapter 207. Federal Election Records (Title III).

### § 20701. Retention and preservation of records and papers by officers of elections; deposit with custodian; penalty for violation.

Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election, except that, when required by law, such records and papers may be delivered to another officer of election and except that, if a State or the Commonwealth of Puerto Rico designates a custodian to retain and preserve these records and papers at a specified place, then such records and papers may be deposited with such custodian, and the duty to retain and preserve any record or paper so deposited shall devolve upon such custodian. Any officer of election or custodian who willfully fails to comply with this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

### § 20702. Theft, destruction, concealment, mutilation, or alteration of records or papers; penalties.

Any person, whether or not an officer of election or custodian, who willfully steals, destroys, conceals, mutilates, or alters any record or paper required by section 20701 of this title to be retained and preserved shall be fined not more than $1,000 or imprisoned not more than one year, or both.

### § 20703. Demand for records or papers by Attorney General or representative; statement of basis and purpose.

Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

### § 20704. Disclosure of records or papers.

Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

### § 20705. Jurisdiction to compel production of records or papers.

The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.

### § 20705. "Officer of election" defined.

As used in this chapter, the term "officer of election" means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

## Chapter 209. Election Administration Improvement (HAVA).

### § 21083. Computerized statewide voter registration list requirements.

(a) Computerized statewide voter registration list requirements

(1) Implementation

(A) In general

Except as provided in subparagraph (B), each State, acting through the chief State election official, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level that contains the name and registration information of every legally registered voter in the State

and assigns a unique identifier to each legally registered voter in the State (in this subsection referred to as the "computerized list"), and includes the following:

(i) The computerized list shall serve as the single system for storing and managing the official list of registered voters throughout the State.

(ii) The computerized list contains the name and registration information of every legally registered voter in the State.

(iii) Under the computerized list, a unique identifier is assigned to each legally registered voter in the State.

(iv) The computerized list shall be coordinated with other agency databases within the State.

(v) Any election official in the State, including any local election official, may obtain immediate electronic access to the information contained in the computerized list.

(vi) All voter registration information obtained by any local election official in the State shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official.

(vii) The chief State election official shall provide such support as may be required so that local election officials are able to enter information as described in clause (vi).

(viii) The computerized list shall serve as the official voter registration list for the conduct of all elections for Federal office in the State.

(B) Exception

The requirement under subparagraph (A) shall not apply to a State in which, under a State law in effect continuously on and after October 29, 2002, there is no voter registration requirement for individuals in the State with respect to elections for Federal office.

(2) Computerized list maintenance

(A) In general

The appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis as follows:

(i) If an individual is to be removed from the computerized list, such individ

ual shall be removed in accordance with the provisions of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.) [now 52 U.S.C. 20501 et seq.], including subsections (a)(4), (c)(2), (d), and (e) of section 8 of such Act (42 U.S.C. 1973gg–6) [now 52 U.S.C. 20507].

(ii) For purposes of removing names of ineligible voters from the official list of eligible voters—

(I) under section 8(a)(3)(B) of such Act (42 U.S.C. 1973gg–6(a)(3)(B)) [now 52 U.S.C. 20507(a)(3)(B)], the State shall coordinate the computerized list with State agency records on felony status; and

(II) by reason of the death of the registrant under section 8(a)(4)(A) of such Act (42 U.S.C. 1973gg–6(a)(4)(A)) [now 52 U.S.C. 20507(a)(4)(A)], the State shall coordinate the computerized list with State agency records on death.

(iii) Notwithstanding the preceding provisions of this subparagraph, if a State is described in section 4(b) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–2(b)) [now 52 U.S.C. 20503(b)], that State shall remove the names of ineligible voters from the computerized list in accordance with State law.

(B) Conduct

The list maintenance performed under subparagraph (A) shall be conducted in a manner that ensures that—

(i) the name of each registered voter appears in the computerized list;

(ii) only voters who are not registered or who are not eligible to vote are removed from the computerized list; and

(iii) duplicate names are eliminated from the computerized list.

(3) Technological security of computerized list

The appropriate State or local official shall provide adequate technological security measures to prevent the unauthorized access to the computerized list established under this section.

(4) Minimum standard for accuracy of State voter registration records

The State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly, including the following:

(A) A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters. Under such system, consistent with the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.) [now 52 U.S.C. 20501 et seq.], registrants who have not responded to a notice and who have not voted in 2 consecutive general elections for Federal office shall be removed from the official list of eligible voters, except that no registrant may be removed solely by reason of a failure to vote.

(B) Safeguards to ensure that eligible voters are not removed in error from the official list of eligible voters.

(5) Verification of voter registration information

(A) Requiring provision of certain information by applicants

(i) In general

Except as provided in clause (ii), notwithstanding any other provision of law, an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes—

(I) in the case of an applicant who has been issued a current and valid driver's license, the applicant's driver's license number; or

(II) in the case of any other applicant (other than an applicant to whom clause (ii) applies), the last 4 digits of the applicant's social security number.

(ii) Special rule for applicants without driver's license or social security number

If an applicant for voter registration for an election for Federal office has not been issued a current and valid driver's license or a social security number, the State shall assign the applicant a number which will serve to identify the applicant for voter registration purposes. To the extent that the State has a computerized list in effect under this subsection and the list assigns unique identifying numbers to registrants, the number assigned under this clause shall be the unique identifying number assigned under the list.

(iii) Determination of validity of numbers provided

The State shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, in accordance with State law.

(B) Requirements for State officials

(i) Sharing information in databases

The chief State election official and the official responsible for the State motor vehicle authority of a State shall enter into an agreement to match information in the database of the statewide voter registration system with information in the database of the motor vehicle authority to the extent required to enable each such official to verify the accuracy of the information provided on applications for voter registration.

(ii) Agreements with Commissioner of Social Security
The official responsible for the State motor vehicle authority shall enter into an agreement with the Commissioner of Social Security under section 405(r)(8) 1 of title 42 (as added by subparagraph (C)).

(C) Omitted

(D) Special rule for certain States
In the case of a State which is permitted to use social security numbers, and provides for the use of social security numbers, on applications for voter registration, in accordance with section 7 of the Privacy Act of 1974 (5 U.S.C. 552a note), the provisions of this paragraph shall be optional.

(b) Requirements for voters who register by mail

(1) In general
Notwithstanding section 6(c) of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–4(c)) [now 52 U.S.C. 20505(c)] and subject to paragraph (3), a State shall, in a uniform and nondiscriminatory manner, require an individual to meet the requirements of paragraph (2) if—

(A) the individual registered to vote in a jurisdiction by mail; and

(B)(i) the individual has not previously voted in an election for Federal office in the State; or

(ii) the individual has not previously voted in such an election in the jurisdiction and the jurisdiction is located in a State that does not have a computerized list that complies with the requirements of subsection (a).

(2) Requirements

(A) In general
An individual meets the requirements of this paragraph if the individual—

(i) in the case of an individual who votes in person—

(I) presents to the appropriate State or local election official a current and valid photo identification; or

(II) presents to the appropriate State or local election official a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter; or

(ii) in the case of an individual who votes by mail, submits with the ballot—

(I) a copy of a current and valid photo identification; or

(II) a copy of a current utility bill, bank statement, government check, paycheck, or other government document that shows the name and address of the voter.

(B) Fail-safe voting

(i) In person
An individual who desires to vote in person, but who does not meet the requirements of subparagraph (A)(i), may cast a provisional ballot under section 21082(a) of this title.

(ii) By mail
An individual who desires to vote by mail but who does not meet the requirements of subparagraph (A)(ii) may cast such a ballot by mail and the ballot shall be counted as a provisional ballot in accordance with section 21082(a) of this title.

(3) Inapplicability
Paragraph (1) shall not apply in the case of a person—

(A) who registers to vote by mail under section 6 of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–4) [now 52 U.S.C. 20505] and submits as part of such registration either—

(i) a copy of a current and valid photo identification; or

(ii) a copy of a current utility bill, bank statement, government check, paycheck, or government document that shows the name and address of the voter;

(B)(i) who registers to vote by mail under section 6 of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–4) [now 52 U.S.C. 20505] and submits with such registration either—

(I) a driver's license number; or

(II) at least the last 4 digits of the individual's social security number; and

(ii) with respect to whom a State or local election official matches the information submitted under clause (i) with an existing State identification record bearing the same number, name and date of birth as provided in such registration; or

(C) who is—

(i) entitled to vote by absentee ballot under the Uniformed and Overseas Citizens Absentee Voting Act [52 U.S.C. 20301 et seq.];

(ii) provided the right to vote otherwise than in person under section 20102(b)(2)(B)(ii) of this title; or

(iii) entitled to vote otherwise than in person under any other Federal law.

(4) Contents of mail-in registration form

(A) In general
The mail voter registration form developed under section 6 of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg–4) [now 52 U.S.C. 20505] shall include the following:

(i) The question "Are you a citizen of the United States of America?" and boxes for the applicant to check to indicate whether the applicant is or is not a citizen of the United States.

(ii) The question "Will you be 18 years of age on or before election day?" and boxes for the applicant to check to indicate whether or not the applicant will be 18 years of age or older on election day.

(iii) The statement "If you checked 'no' in response to either of these questions, do not complete this form.".

(iv) A statement informing the individual that if the form is submitted by mail and the individual is registering for the first time, the appropriate information

required under this section must be submitted with the mail-in registration form in order to avoid the additional identification requirements upon voting for the first time.

(B) Incomplete forms

If an applicant for voter registration fails to answer the question included on the mail voter registration form pursuant to subparagraph (A)(i), the registrar shall notify the applicant of the failure and provide the applicant with an opportunity to complete the form in a timely manner to allow for the completion of the registration form prior to the next election for Federal office (subject to State law).

(5) Construction

Nothing in this subsection shall be construed to require a State that was not required to comply with a provision of the National Voter Registration Act of 1993 (42 U.S.C. 1973gg et seq.) [now 52 U.S.C. 20501 et seq.] before October 29, 2002, to comply with such a provision after October 29, 2002.

(c) Permitted use of last 4 digits of social security numbers

The last 4 digits of a social security number described in subsections (a)(5)(A)(i)(II) and (b)(3)(B)(i)(II) shall not be considered to be a social security number for purposes of section 7 of the Privacy Act of 1974 (5 U.S.C. 552a note).

(d) Effective date

(1) Computerized statewide voter registration list requirements

(A) In general

Except as provided in subparagraph (B), each State and jurisdiction shall be required to comply with the requirements of subsection (a) on and after January 1, 2004.

(B) Waiver

If a State or jurisdiction certifies to the Commission not later than January 1, 2004, that the State or jurisdiction will not meet the deadline described in subparagraph (A) for good cause and includes in the certification the reasons for the failure to meet such deadline, subparagraph (A) shall apply to the State or jurisdiction as if the reference in such subparagraph to "January 1, 2004" were a reference to "January 1, 2006".

(2) Requirement for voters who register by mail

(A) In general

Each State and jurisdiction shall be required to comply with the requirements of subsection (b) on and after January 1, 2004, and shall be prepared to receive

registration materials submitted by individuals described in subparagraph (B) on and after the date described in such subparagraph.

(B) Applicability with respect to individuals

The provisions of subsection (b) shall apply to any individual who registers to vote on or after January 1, 2003.

**§ 21111. Actions by the Attorney General for declaratory and injunctive relief.**

The Attorney General may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083, and 21083a of this title.

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | * | |
| | * | |
| *Plaintiff-Appellant*, | * | No. 26-1878 |
| v. | * | |
| JARED DEMARINIS, *et al.*, | * | |
| *Defendant-Appellee*. | | |

* * * * * * * * * * * * * *

## CERTIFICATE OF SERVICE

I certify that, on this 30th day of September, 2026, the Brief of Appellee State Administrator DeMarinis was filed electronically and served on counsel of record who are registered CM/ECF users.

/s/ Daniel M. Kobrin
___________________________
Daniel M. Kobrin
Assistant Attorney General