# CASE NO. 26-1878

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

JARED DEMARINIS,

*Defendant-Appellee*,

COMMON CAUSE, et al.,
*Defendants-Intervenors-Appellees*

ON APPEAL FROM
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Case No. 1:25-cv-3934-SAG

# RESPONSE BRIEF OF DEFENDANTS-INTERVENORS-APPELLEES COMMON CAUSE, OUT FOR JUSTICE, INC., CARL SNOWDEN, MYRIAM PAUL, AND LUIS SIMS

SUBMITTED BY:

Jonathan Topaz
Theresa J. Lee
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

Deborah A. Jeon
Dara Johnson
AMERICAN CIVIL LIBERTIES
UNION OF MARYLAND
3600 Clipper Mill Road
Suite 200
Baltimore, MD 21211
Tel. 410-889-8555
jeon@aclu-md.org
djohnson@aclu-md.org

*Attorneys for Defendants-Intervenors-Appellees Common Cause, Out for Justice, Inc., Carl Snowden, Myriam Paul, and Luis Sims*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

# DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-1878 Caption: United States v. DeMarinis

Pursuant to FRAP 26.1 and Local Rule 26.1,

Common Cause Maryland
(name of party/amicus)

who is Appellee-Intervenor/Defendant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Dara Johnson Date: 07/24/2026

Counsel for: Appellee-Intervenor/Defendant

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-1878 Caption: United States v. DeMarinis

Pursuant to FRAP 26.1 and Local Rule 26.1,

Out for Justice, Inc.
(name of party/amicus)

who is Appellee-Intervenor/Defendant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Dara Johnson Date: 07/24/2026

Counsel for: Appellee-Intervenor/Defendant

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... vii
APPELLEES' JURISDICTIONAL STATEMENT .......... 1
STATEMENT OF THE ISSUES .......... 1
STATEMENT OF THE CASE .......... 1
SUMMARY OF ARGUMENT .......... 2
LEGAL STANDARD .......... 3
ARGUMENT .......... 3
I. DOJ Seeks Records Outside the Scope of Title III. .......... 3
II. DOJ's Request Is Legally Deficient Because It Offers an Inadequate and Pretextual Statement of Its Basis and Its Purpose. .......... 3
A. DOJ is not entitled to summary proceedings because the Federal Rules of Civil Procedure apply to this action. .......... 4
B. DOJ's demand fails to satisfy Title III's basis-and-purpose requirements. .......... 9
1. DOJ Fails to Satisfy the Basis Requirement. .......... 11
2. DOJ's Fails to Satisfy the Purpose Requirement. .......... 15
3. DOJ's Demand Separately Fails Because It Is Pretextual. .......... 20
III. Maryland Voters' Constitutional Rights Require Redaction, so the Requested Relief Fails. .......... 23
CONCLUSION .......... 25
STATEMENT REGARDING ORAL ARGUMENT .......... 27

# TABLE OF AUTHORITIES

## Cases

*Alliance for Retired Americans v. Bessent*,
770 F. Supp. 3d 79 (D.D.C. 2025) ........ 25

*Department of Commerce v. New York*,
588 U.S. 752 (2019) ........ 23

*Donaldson v. United States*,
400 U.S. 517 (1971) ........ 8

*Kadel v. North Carolina State Health Plan for Teachers & State Employees*,
12 F.4th 422 (4th Cir. 2021) ........ 12

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ........ 7, 16, 25

*Megaro v. McCollum*,
66 F.4th 151 (4th Cir. 2023) ........ 22

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021) ........ 23

*Polselli v. Internal Revenue Service*,
598 U.S. 432 (2023) ........ 8

*Project Vote/Voting for America, Inc. v. Long*,
682 F.3d 331 (4th Cir. 2012) ........ 24

*Public Interest Legal Foundation v. Benson*,
136 F.4th 613 (6th Cir. 2025) ........ 15

*Public Interest Legal Foundation, Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) .......... 24

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*,
996 F.3d 257 (4th Cir. 2021) .......... 24

*Reyes-Gaona v. North Carolina Growers Association*,
250 F.3d 861 (4th Cir. 2001) .......... 7

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 10

*United States v. Adams*,
No. 3:26-cv-00019, 2026 WL 2123871 (E.D. Ky. July 23, 2026) .......... 5

*United States v. Aguilar*,
No. 25-cv-728, 2026 WL 2364502 (D. Nev. Aug. 14, 2026) .......... 4, 8, 11

*United States v. Amore*,
831 F. Supp. 3d 149 (D.R.I. 2026) .......... passim

*United States v. Bellows*,
834 F. Supp. 3d 113 (D. Me. 2026) .......... 5, 16, 25

*United States v. Benson*,
179 F.4th 470 (6th Cir. 2026) .......... 4, 10, 13, 17

*United States v. Board of Elections of New York*,
No. 1:25-cv-1338, 2026 WL 1999921 (N.D.N.Y. July 10, 2026) .......... 5

*United States v. Caldwell*,
No. 26-cv-2025, 2026 WL 2186515 (D.N.J. July 29, 2026) .......... 5

*United States v. DeMarinis*,
No. SAG-25-3934, 2026 WL 1780586 (D. Md. June 18, 2026) ............ 5

*United States v. Fontes*,
832 F. Supp. 3d 944 (D. Ariz. 2026) ............................................ 5

*United States v. Galvin*,
830 F. Supp. 3d 122 (D. Mass. 2026) ................................... passim

*United States v. Griswold*,
No. 25-cv-3967, 2026 WL 2235374 (D. Colo. Aug. 3, 2026).... 5, 6, 8, 16

*United States v. Hanzas*,
No. 25-cv-00903, 2026 WL 2754349 (D. Vt. Sept. 17, 2026) ........... 4, 9

*United States v. Hobbs*,
No. C25-6078, 2026 WL 2833713 (W.D. Wash. Sept. 22, 2026) .......... 4

*United States v. Koski*,
No. 3:26-cv-42, 2026 WL 2032532 (E.D. Va. July 14, 2026) ................ 5

*United States v. Matthews*,
No. 25-cv-3398, 2026 WL 2212877 (C.D. Ill. July 31, 2026) ...... passim

*United States v. Oliver*,
No. 1:25-cv-01193, 2026 WL 2031479 (D.N.M. July 14, 2026) ........... 5

*United States v. Oregon*,
828 F. Supp. 3d 1092 (D. Or. 2026) ....................................... passim

*United States v. Powell*,
379 U.S. 48 (1964) ........................................................................ 7

*United States v. Schmidt*,
No. 2:25-cv-01481, 2026 WL 1850016 (W.D. Pa. June 27, 2026). 16, 20

*United States v. Simms*,
914 F.3d 229 (4th Cir. 2019) .......... 24

*United States v. Simon*,
No. 25-cv-3761, 2026 WL 2389778 (D. Minn. Aug. 17, 2026) .......... 4

*United States v. Warner*,
No. 2:26-cv-156, 2026 WL 2018877 (S.D. W.Va. July 13, 2026) passim

*United States v. Weber*,
816 F. Supp. 3d 1168 (C.D. Cal. 2026) .......... passim

*United States v. Wisconsin Elections Commission*,
833 F. Supp. 3d 949 (W.D. Wis. 2026) .......... 4

*Williams v. Professional Transportation, Inc.*,
294 F.3d 607 (4th Cir. 2002) .......... 13

**Statutes**

26 U.S.C. § 7604 .......... 7

26 U.S.C. § 7605 .......... 7

52 U.S.C. § 20507 .......... 17, 19, 23

52 U.S.C. § 20701 .......... 23

52 U.S.C. § 20703 .......... passim

52 U.S.C. § 20705 .......... 4, 6, 7

52 U.S.C. § 21083 .......... 17, 19

52 U.S.C. § 21085 .......... 17, 19

**Other Authorities**

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag., Nov. 16, 2025 .................................... 22

Exec. Order No. 14,399, 91 Fed. Reg. 17125 (Mar. 31, 2026) ................. 22

*Read Bondi's Letter to Minnesota's Governor*, N.Y. Times, Jan. 24, 2026 ....................................................................................... 22

**Rules**

Fed. R. Civ. P. 1 ......................................................................... 6

Fed. R. Civ. P. 81 ..................................................................... 6, 8

## APPELLEES' JURISDICTIONAL STATEMENT

Appellees Common Cause, Out for Justice, Inc., Carl Snowden, Myriam Paul, and Luis Sims ("Common Cause Appellees") adopt by reference the Jurisdictional Statement of Appellee DeMarinis.

## STATEMENT OF THE ISSUES

1. Did the District Court correctly conclude that Maryland's statewide voter registration list (SVRL) is "not a record or paper that a state must produce to the United States under the CRA," JA9, such that Appellant's case should be dismissed?
2. Did Appellant fail to set forth a "demand in writing" that "shall contain a statement of the basis and the purpose therefor," 52 U.S.C. § 20703, thus constituting an alternative justification for dismissal of Appellant's case?

## STATEMENT OF THE CASE

Common Cause Appellees adopt by reference the Statement of the Case of Appellee DeMarinis.

## SUMMARY OF ARGUMENT

Appellant, through the U.S. Department of Justice (DOJ), failed to provide any valid statement of "th*e* basis and the purpose" for its demand for Maryland's unredacted voter list. 52 U.S.C. § 20703. DOJ has all but conceded that it has no factual basis for its demand, and only halfheartedly attempts to conjure one for the first time at the appellate stage. Further, the generalized purpose DOJ offers does not match the records demanded. Even if this purpose were otherwise valid, Appellant's own public statements and other judicially noticeable public records strongly suggest that it is pretextual and thus fails to comply with the statutory requirements of Title III of the Civil Rights Act of 1960 (CRA) for that reason as well. DOJ's failure to provide a basis and valid purpose are each independently fatal to its claim.

Additionally, the relief DOJ seeks—Maryland's complete and unredacted SVRL—cannot be granted without trampling Maryland voters' constitutional and privacy rights. As courts have consistently held, redacting such information is appropriate and even sometimes constitutionally required to ensure disclosures do not burden citizens' fundamental right to vote or violate their privacy interests. Because DOJ

seeks relief that cannot be granted, this Court can also affirm the district court's dismissal on that ground.

## LEGAL STANDARD

Common Cause Appellees adopt by reference the Legal Standard of Appellee DeMarinis.

## ARGUMENT

### I. DOJ Seeks Records Outside the Scope of Title III.

Common Cause Appellees adopt by reference Appellee DeMarinis' argument that DOJ's complaint should be dismissed because Title III does not cover Maryland's SVRL.

### II. DOJ's Request Is Legally Deficient Because It Offers an Inadequate and Pretextual Statement of Its Basis and Its Purpose.

Even if Maryland's SVRL were covered under Title III, DOJ's demand fails because it does not comply with Title III's requirement that the Attorney General set forth a "demand in writing" that "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. DOJ's failure to fulfill Title III's requirements constitutes alternative bases for dismissal.

### A. DOJ is not entitled to summary proceedings because the Federal Rules of Civil Procedure apply to this action.

As an initial matter, the Federal Rules of Civil Procedure govern this civil action because Title III does not create any special exception from the Federal Rules. *See* 52 U.S.C. § 20705. DOJ asserts that a Title III demand is a "special statutory proceeding" and that the district court erred in applying the Federal Rules to its federal civil action. Dkt. 29 at 38–48 (DOJ Br.). But as 21 federal courts have correctly concluded,[1] the Rules must be followed here. *See United States v. Benson*, 179 F.4th 470, 483 n.2 (6th Cir. 2026); Supp. App. 8–11, *United States v. Raffensperger*, No. 26-cv-485, Dkt. No. 146 (N.D. Ga. Sept. 30, 2026); *United States v. Hobbs*, No. C25-6078, 2026 WL 2833713, at *3 n.6 (W.D. Wash. Sept. 22, 2026); *United States v. Hanzas*, No. 25-cv-903, 2026 WL 2754349, at *2–3 (D. Vt. Sept. 17, 2026); *United States v. Simon*, No. 25-cv-3761, 2026 WL 2389778, at *7–8 (D. Minn. Aug. 17, 2026); *United States v. Aguilar*, No. 25-cv-728, 2026 WL 2364502, at *2–3 (D. Nev. Aug. 14, 2026); *United*

[1] Multiple federal courts declined to reach the issue because they held that DOJ's demand was so meritless that the case should be dismissed under *any* standard. *See United States v. WEC*, 833 F. Supp. 3d 949, 953 (W.D. Wis. 2026); *United States v. Galvin*, 830 F. Supp. 3d 122, 128–29 & n.8 (D. Mass. 2026).

*States v. Griswold*, No. 25-cv-3967, 2026 WL 2235374, at *3 (D. Colo. Aug. 3, 2026); *United States v. Matthews*, No. 25-cv-3398, 2026 WL 2212877, at *2 (C.D. Ill. July 31, 2026); *United States v. Caldwell*, No. 26-cv-2025, 2026 WL 2186515, at *5 (D.N.J. July 29, 2026); *United States v. Adams*, No. 3:26-cv-00019, 2026 WL 2123871, at *3–4 (E.D. Ky. July 23, 2026); *United States v. Oliver*, No. 1:25-cv-01193, 2026 WL 2031479, at *7 (D.N.M. July 14, 2026); *United States v. Koski*, No. 3:26-cv-42, 2026 WL 2032532, at *1 n.2 (E.D. Va. July 14, 2026); *United States v. Warner*, No. 2:26-cv-156, 2026 WL 2018877, at *2 (S.D. W.Va. July 13, 2026); *United States v. Bd. of Elections of N.Y.*, No. 1:25-cv-1338, 2026 WL 1999921, at *6–7 (N.D.N.Y. July 10, 2026); *United States v. Scanlan*, No. 25-cv-371, 2026 WL 1864054, at *1 n.2 (D.N.H. June 29, 2026); *United States v. DeMarinis*, No. SAG-25-3934, 2026 WL 1780586, at *3 (D. Md. June 18, 2026) (and at JA5–JA6); *United States v. Bellows*, 834 F. Supp. 3d 113, 121–22 (D. Me. 2026); *United States v. Fontes*, 832 F. Supp. 3d 944, 947 & n.1 (D. Ariz. 2026; *United States v. Amore*, 831 F. Supp. 3d 149, 154–55 (D.R.I. 2026); *United States v. Oregon*, 828 F. Supp. 3d 1092, 1102–03 (D. Or. 2026); *United States v. Weber*, 816 F. Supp. 3d 1168, 1182 (C.D.

Cal. 2026). Statutory text and controlling Supreme Court precedent also compel this conclusion.

Start with the text. Title III provides: "The United States District Court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). This "appropriate process" is set forth in the Federal Rules of Civil Procedure, which "govern the procedure in *all* civil actions and proceedings in the United States district courts," Fed. R. Civ. P. 1 (emphasis added), subject to a narrow set of express exceptions which does not include Title III requests, Fed. R. Civ. P. 81. *See Griswold*, 2026 WL 2235374, at *3 ("The CRA says nothing suggesting the inapplicability of the Federal Rules of Civil Procedure."); *Caldwell*, 2026 WL 2186515, at *5 ("Nothing in the CRA displaces the [Federal Rules of Civil Procedure] or precludes the Court from determining whether the DOJ's demand complies with all applicable statutory requirements."). Under the *expressio unius* canon of construction, the fact that Rule 81 enumerates specific exceptions to the applicability of the Rules implies that there are no other proceedings

under which the Rules are not applicable. *See Reyes-Gaona v. N.C. Growers Ass'n*, 250 F.3d 861, 865 (4th Cir. 2001) (discussing canon).

The Supreme Court's binding decision in *United States v. Powell*, 379 U.S. 48 (1964)—decided *after Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), the non-binding case on which DOJ principally relies—requires the same conclusion. Like Title III, the statute at issue in *Powell* confers jurisdiction on district courts "by appropriate process to compel" compliance with federal document demands. *See* 26 U.S.C. § 7604(a). DOJ tries to distinguish *Powell* by discussing the case's references to other provisions in the Internal Revenue Code. DOJ Br. 43 (citing 26 U.S.C. § 7605). This is a red herring: *Powell* specifically held that "the Federal Rules of Civil Procedure apply" *not* because of the language in § 7605, but "[b]ecause [§] *7604(a)* contains no provision specifying the procedure to be followed in invoking the court's jurisdiction." *Powell*, 379 U.S. at 58 n.18 (emphasis added). The same dispositive language in Section 7604(a) is included in the CRA: "[t]he United States district court . . . shall have jurisdiction *by appropriate process*." 52 U.S.C. § 20705 (emphasis added). The Supreme Court thus held in *Powell* that the Federal Rules apply due to statutory language that appears, in identical

form, in the CRA. *See Griswold*, 2026 WL 2235374, at *3; *Matthews*, 2026 WL 2212877, at *2.

The Supreme Court confirmed this interpretation in subsequent cases. *See Donaldson v. United States*, 400 U.S. 517, 528 (1971) ("The Civil Rules, of course, do have an application to a summons proceeding." (citing Fed. R. Civ. P. 81)), *superseded by statute on unrelated grounds sub nom. Polselli v. IRS*, 598 U.S. 432 (2023). The language quoted in *Donaldson*—from what was then Rule 81(a)(3)—is materially identical to the language in current Rule 81(a)(5), which governs this case today. Fed. R. Civ. P. 81(a)(5) ("These rules apply to proceedings to compel . . . the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings."). DOJ cannot square its interpretation with these decisions and the Rules themselves. *See Aguilar*, 2026 WL 2364502, at *2 ("Neither the text of the statute nor the weight of precedent support the Government's position.").

Finally, DOJ chose to commence this action by filing a Complaint. *See* R.1.[2] Having invoked the Rules to initiate this litigation and to defend its pleadings elsewhere, DOJ cannot now disclaim those choices because the results proved unfavorable. *See Hanzas*, 2026 WL 2754349, at *3 (DOJ commenced its action "through traditional litigation," so "it cannot change its request now"); *Oregon*, 828 F. Supp. 3d at 1102 n.1 ("Even if *Lynd* applied here, the [c]ourt doubts its applicability here where [DOJ] made an affirmative choice to file a complaint and proceed through ordinary litigation."); *Amore*, 831 F. Supp. 3d at 155 n.1 (similar).

**B. DOJ's demand fails to satisfy Title III's basis-and-purpose requirements.**

To comply with Title III, the Attorney General must set forth a "demand in writing" that "shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. There are three notable aspects of Title III's text. *First*, Title III's phrase "*shall* contain" demonstrates that "the requirement that the Attorney General state 'the basis'" and the

[2] In this Brief, "Dkt." refers to items as they are numbered in this Court's docket and "R." refers to items as they are numbered in the district court docket.

purpose "is mandatory, not a mere formality with which the federal government or this Court is free to dispense." *United States v. Galvin*, 830 F. Supp. 3d 122, 127 (D. Mass. 2026); *see also Benson*, 179 F.4th at 483 (noting the word "shall" "creates an obligation impervious to judicial discretion" (quoting *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024))).

*Second*, the demand must be made "in writing," meaning that the basis and the purpose "must be made express." *Galvin*, 830 F. Supp. 3d at 128. In this way, "[t]he statute therefore directs the Court to the Attorney General's written demand—rather than [DOJ's] subsequent court filings—to determine whether that demand" satisfies the basis and purpose requirements. *Id.*

*Third*, the statute's requirement that the demand "'contain a statement of the basis and the purpose thereof,' employ[s] the definite article 'the' before each noun and join[s] the two with the conjunctive 'and.'" *Scanlan*, 2026 WL 1864054, at *6. As such, "[o]n its plain terms, this construction signals that 'basis' and 'purpose' are separate, non-overlapping requirements, each of which must independently be satisfied." *Id.*; *see also Benson*, 179 F.4th at 483; *Galvin*, 830 F. Supp. 3d

at 128 (finding that "the statutory text clearly conveys that 'the basis' and 'the purpose' are conceptually distinct.").

DOJ's written demand does not satisfy either of Title III's requirements that the Attorney General state "the basis" and "the purpose" for the demand. Each is an independent reason to affirm dismissal.

*1. DOJ Fails to Satisfy the Basis Requirement.*

As many courts have held, "the 'basis' contemplated by Title III is a factual, not legal basis." *Warner*, 2026 WL 2018877, at *5; *see also Aguilar*, 2026 WL 2364502, at *5; *Matthews*, 2026 WL 2212877, at *5; *Amore*, 831 F. Supp. 3d at 156; *Scanlan*, 2026 WL 1864054, at *7 (noting this textual "reading also accords with the Attorney General's own historical practice under Title III"); *Galvin*, 830 F. Supp. 3d at 127 (noting dictionary definitions for "basis" include the "foundation" or "'chief supporting factor' 'for' the demand" (citation omitted)); *Oregon*, 828 F. Supp. 3d at 1103; *Weber*, 816 F. Supp. 3d at 1184. "To read 'basis' as meaning a legal basis would conflate that requirement with the required statement of the demand's 'purpose.'" *Amore*, 831 F. Supp. 3d at 156; *see also Matthews*, 2026 WL 2212877, at *5; *Galvin*, 830 F. Supp. 3d at 128.

DOJ has all but conceded throughout this litigation that it lacks a factual basis for its demand. At the district court, DOJ argued that the basis for its demand was "Section 303 of the CRA." R.56 at 17, DOJ's Mem. in Opp. to Mots. to Dismiss and in Supp. of Mot. to Compel—which is DOJ's purported legal authority, not a factual basis. Further, after the courts in *Galvin* and *Amore* dismissed DOJ's materially identical suits, DOJ requested that if the district court agreed with those courts that a factual basis were required, "the [c]ourt provide leave for the United States to send [Appellees] a curing elaboration letter rather than dismiss on the merits." JA195. DOJ has thus already conceded that if a factual basis is required, the written demand it sent to Appellee DeMarinis must be "cur[ed]" to provide it. *Id.*

DOJ changes tack for the first time on appeal, arguing that the letters it sent to Appellee DeMarinis on July 14, 2025 (July 14 Letter) and August 18, 2025 (August 18 Letter) "both individually and together provided ample 'basis' for the demand." DOJ Br. 48. To the extent DOJ now attempts to argue for a factual basis, this argument is forfeited. *See Kadel v. N.C. State Health Plan for Tchrs. & State Emps.*, 12 F.4th 422, 430 (4th Cir. 2021) (recognizing this Court has "repeatedly held that

issues raised for the first time on appeal generally will not be considered" and setting out exceptions "only in very limited circumstances") (internal citations omitted); *Williams v. Pro. Transp., Inc.*, 294 F.3d 607, 614 (4th Cir. 2002) (similar).

Regardless, DOJ's new purported factual basis fails on the merits. As many federal courts have held, the plain text of Title III requires that *one* written demand contain *both* the basis and the purpose for the demand, rather than a basis and purpose spread across multiple letters. *See Benson*, 179 F.4th at 483 (Title III requires "that any [single] demand must contain both" a basis and purpose); *Oregon*, 828 F. Supp. 3d at 1104 (rejecting DOJ's "patchwork and post hoc effort to stitch together a legally sufficient 'statement of the basis'" by attempting to combine two letters that it sent to the state).

DOJ has already *expressly identified* the August 18 Letter—and not the July 14 Letter—as the "written demand" under Title III. JA32 ¶ 28. Considering that the August 18 Letter provides the more express and final demand for the *unredacted* voter list, *compare* JA46, JA48 & n.2, *with* JA35–JA36, this Court should agree with both parties and consider that letter as the written demand, rather than the July 14 Letter. The

August 18 Letter does not contain—nor does DOJ identify, *see* DOJ Br. 48–49—any facts that could underlie a potential basis, JA46–48. DOJ's written demand is thus plainly inadequate.

Even if multiple letters could be combined into one demand and this Court considered the July 14 Letter, DOJ still has not provided a sufficient factual basis. In that letter, DOJ requested data related to information in the EAC's Election Administration and Voting Survey (EAVS). JA35–JA36. But multiple federal courts have already held that there was an insufficient factual basis when DOJ's correspondence included the same kind of data gleaned from EAVS reports. *See* Supp. App. 25, *United States v. Weber*, No. 2:25-cv-9149, Dkt. 87-3, at 2 (C.D. Cal. Dec. 1, 2025); Supp. App. 29, *United States v. Schmidt*, No. 2:25-cv-1481, Dkt. 103-3, at 2 (W.D. Pa. Jan. 12, 2026).

Aggregate national survey data reflecting normal variation in state practices is not a sufficient "basis" for an extraordinary demand for Marylanders' sensitive personal data. The EAVS Report is a biennial survey that compiles aggregate public election-administration data submitted by all fifty states and U.S. territories; it provides a broad overview of the nation's decentralized electoral system and expressly

reflects that registration practices vary significantly among states. It does not distinguish between lawful differences in state procedures and possible noncompliance with federal law, nor does it provide the underlying data needed to evaluate whether a state has made a "reasonable effort" under the NVRA. DOJ never pleaded—nor does it now explain—how any of the metrics EAVS captures could suggest that Maryland's list maintenance program fails the NVRA's "reasonable effort" standard. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–27 (6th Cir. 2025) (describing a "reasonable effort" as "a serious attempt that is rational and sensible" which "need not be perfect, or even optimal"), *cert. denied*, 146 S. Ct. 1772 (U.S. Mar. 2, 2026). This cannot support a demand under the CRA. *See Galvin*, 830 F. Supp. 3d at 127 (quoting multiple dictionary definitions to hold that the "basis" must constitute the "support," "foundation," or "[f]undamental principle" underlying the demand).

*2. DOJ's Fails to Satisfy the Purpose Requirement.*

DOJ's demand is further deficient because it does not have a proper "purpose" as required by Title III. DOJ's specified purpose was "to ascertain Maryland's compliance with the list maintenance requirements

of the NVRA and HAVA." R.56 at 17 (quoting August 18 Letter). At least eight federal courts in DOJ's parallel suits have held that this or a substantially similar purpose did not satisfy Title III. *See Griswold*, 2026 WL 2235374, at *4; *Matthews*, 2026 WL 2212877, at *5–6; *Warner*, 2026 WL 2018877, at *6–8; *Bellows*, 834 F. Supp. 3d at 123–26; *United States v. Schmidt*, No. 2:25-cv-01481, 2026 WL 1850016, at *2 (W.D. Pa. June 27, 2026); *Amore*, 831 F. Supp. 3d at 158; *Oregon*, 828 F. Supp. 3d at 1104–05; *Weber*, 816 F. Supp. 3d at 1183–84.

The statutorily required "purpose" is an explanation of how the requested records would help determine if there is a legal violation. *See, e.g.*, *Lynd*, 306 F.2d at 229 n.6. Title III requires an "assessment of the sufficiency of . . . the purpose asserted," *Bellows*, 834 F. Supp. 3d at 124; otherwise, "[i]f *any* purpose . . . would suffice, then the requirement of stating the demand's purpose would serve no function," *Oregon*, 828 F. Supp. 3d at 1104; *see also Bellows*, 834 F. Supp. 3d at 124.

DOJ's demand fails Title III's purpose requirement for five reasons. *First*, DOJ's demand is designed "to investigate list maintenance procedures," rather than "investigating violations of individuals' voting rights." *Oregon*, 828 F. Supp. 3d at 1105. As many courts have held, the

CRA's plain text, legislative design, and purpose—to "help end voting discrimination," *Benson*, 179 F.4th at 474—mean that any valid purpose for a Title III demand must constitute "an investigation into potential violations of an individual's right to vote." *Warner*, 2026 WL 2018877, at *7; *see also Matthews*, 2026 WL 2212877, at *5; *Amore*, 831 F. Supp. 3d at 157–58; *Oregon*, 828 F. Supp. 3d at 1105. DOJ's stated purpose of "ascertain[ing] Maryland's compliance with the list maintenance requirements of the NVRA and HAVA," R.56 at 17 (quoting August 18 Letter), "lack[s] any reference or relation to the purposes for which Title III was enacted" and is thus deficient. *Oregon*, 828 F. Supp. 3d at 1105.

*Second*, *States*—not the federal government—are tasked with list maintenance. *See* 52 U.S.C. § 20507(a)(4) (states must "conduct a general program that makes a reasonable effort to remove the names of ineligible voter"); 52 U.S.C. § 21083(a)(2)(A) (states must "perform list maintenance . . . on a regular basis"). Those States, including Maryland, have significant discretion under federal law to conduct that maintenance. *See* 52 U.S.C. § 21085 ("The specific choices on the methods of complying with" HAVA's list maintenance procedures "shall be left to the discretion of the State."); 52 U.S.C. § 20507(a)(4), (c)(1); *see also*

*Galvin*, 830 F. Supp. 3d at 125 ("[F]ederal law largely leaves the finer details of list maintenance to the states' discretion."); *Amore*, 831 F. Supp. 3d at 152; *Oregon*, 828 F. Supp. 3d at 1097.

*Third*, the requested records are not germane or necessary for determining Maryland's compliance with the NVRA and HAVA because any voter file reflects just one point in time. DOJ seeks a static voter list, whereas Maryland's list is constantly evolving and changing. *See* JA40–JA42 (Appellee DeMarinis outlining to DOJ the iterative processes his office regularly conducts to ensure the voter roll is current); Supp. App. 35, *United States v. Fontes*, No. 2:26-cv-66-SMB, Dkt. 8-4 at 4 (Arizona Secretary of State informing DOJ that the statewide voter file "alone does not provide evidence regarding Arizona's compliance with" federal law and instead "merely captures a snapshot in time and provides little information about list maintenance activities.").

*Fourth*, DOJ has never—in either of its two letters to Appellee DeMarinis, its Complaint, or any filings—alleged any evidence of anomalies or anything inconsistent with reasonable and lawful list-maintenance efforts.

*Fifth*, far from indicating a purpose of ensuring compliance with federal list maintenance requirements under the NVRA and HAVA, DOJ's actions and desired outcome here would violate those very statutes. In connection with its request for SVRLs across the country, DOJ has sought states' agreement to a memorandum of understanding (MOU). *See* JA150–JA158. The MOU's terms contravene the NVRA's and HAVA's requirements. For one, DOJ's MOU would place authority to identify supposedly ineligible voters in the hands of the federal government, directly contrary to the NVRA's and HAVA's aforementioned requirements that procedures for complying with the statute be "left to the discretion of the State." 52 U.S.C. § 21085; *see* JA151, JA154; *see also* 52 U.S.C. § 20507(a); 52 U.S.C. § 21083(a)(2), (4). In addition, the MOU's substantive terms would allow DOJ to compel states to remove supposedly ineligible voters "within forty-five (45) days," JA154, in a manner that would violate multiple protections of the NVRA and HAVA, including the requirement to provide voters with notice prior to their removal from the rolls and the bar against systematic voter removals within 90 days of an election, 52 U.S.C. § 20507; *id.* § 21083(a)(2)(A). The MOU confirms that DOJ's stated purpose of ensuring

compliance with list maintenance procedures in federal voting statutes is not accurate or plausible.

*3. DOJ's Demand Separately Fails Because It Is Pretextual.*

Three courts have held that DOJ's demands for SVRLs fail Title III's requirements because DOJ's stated purpose was contrived. *See Schmidt*, 2026 WL 1850016, at *2; *Oregon*, 828 F. Supp. 3d at 1106–08; *Weber*, 816 F. Supp. 3d at 1184–86. A fourth court signaled significant distrust of DOJ's representations, stating: "[O]ne is left to wonder what the real purpose was for [DOJ] to go to the trouble of filing civil actions like this one all around the nation." *Warner*, 2026 WL 2018877, at *8 n.9 (calling DOJ's actions "[t]roubling").

The Pennsylvania, Oregon, and California courts held that DOJ's stated purpose was "pretextual" and that its true goal was "to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *Weber*, 816 F. Supp. 3d at 1184–86; *see also Oregon*, 828 F. Supp. 3d at 1106, 1108 (noting DOJ's "statements that it intends to create a nationwide database of confidential voter information and use it in unprecedented ways, including immigration enforcement efforts, is chilling."); *Schmidt*, 2026 WL 1850016, at *2 (similar). And

they have held that "[t]he presumption of regularity that has been previously extended to [DOJ] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds." *Oregon*, 828 F. Supp. 3d at 1107.

There is copious judicially noticeable evidence supporting these findings. DOJ admits it will share voter information with agencies like the Department of Homeland Security (DHS), thus potentially facilitating immigration investigations. Supp. App. 85, 100–01, Mar. 26, 2026 Hr'g Tr. at 50:21–23, 65:1–66:18, *United States v. Amore*, No. 25-cv-639 (D.R.I. filed Dec. 2, 2025). DOJ has demanded unredacted SVRLs from all 50 states and has initiated 31 lawsuits to compel production—despite claiming to have state-specific reasons to request each list. DOJ has admitted that the federal government has shared voter roll information with election denier groups and social security data on an unapproved third-party server, in a "manner [that] is outside [the U.S. Social Security Administration's] security protocols." Supp. App. 154–55, Notice of Corr. to the Rec., Dkt. 197 at 5–6, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 1:25-cv-596 (D. Md. Jan. 16, 2026).

Appellant has issued an executive order requiring creation of a national voter registration list, *see* Exec. Order No. 14,399, 91 Fed. Reg. 17125 (Mar. 31, 2026), and former DOJ employees state they were tasked with procuring states' voter rolls to match with DHS data.[3] And the then-Attorney General herself wrote to the Minnesota Governor tying "Operation Metro Surge," which involves abuses by ICE against Minnesota's civilian population, with the state's refusal to turn over its SVRL.[4]

DOJ does not deny *any* of this, claiming only that some evidence is "inadmissible hearsay." DOJ Br. 53–56 & n.9. Yet none of the above is hearsay and DOJ has no answer for any of it. *See generally Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) ("[A] court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.").

---

[3] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag., Nov. 16, 2025, https://perma.cc/L39A-S5VZ.

[4] *Read Bondi's Letter to Minnesota's Governor*, N.Y. Times, Jan. 24, 2026, https://perma.cc/H5GY-ZKBS.

DOJ suggests it is permissible to have a "secondary motive." DOJ Br. 55. Yet, Title III requires a written demand of "*the* basis and *the* purpose." 52 U.S.C. § 20703 (emphases added). By twice using the definite article, the statute requires *the complete* basis and *the complete* purpose underlying the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165–66 (2021) (noting inclusion of definite article with singular noun implies each noun is "a discrete thing"). DOJ's demand, when evaluated alongside the unrebutted evidence listed above, establishes a "significant mismatch" between stated and actual reasons that courts must not accept. *Dep't of Com. v. New York*, 588 U.S. 752, 755, 785 (2019) (rejecting agency's "contrived" justification and refusing to "exhibit a naiveté from which ordinary citizens are free" (citation omitted)).

### III. Maryland Voters' Constitutional Rights Require Redaction, so the Requested Relief Fails.

No matter what, DOJ is not entitled to its requested relief. Cases interpreting the NVRA's public disclosure provision are instructive when interpreting the CRA's provision because both use the same "all records" language. *Compare* 52 U.S.C. § 20507(i), *with* 52 U.S.C. § 20701. Courts have consistently interpreted the NVRA's public disclosure provision to

permit, and sometimes require, redaction and the protection of confidential materials. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and such redaction "can further assuage the potential privacy risks implicated by the public release of the Voter File."); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266–68 (4th Cir. 2021). And this Court has held that redaction also may be affirmatively required if the disclosure would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (citation omitted). Public disclosure provisions such as those in the NVRA and Title III must thus be interpreted to avoid this unconstitutional burden. *See generally United States v. Simms*, 914 F.3d 229, 251 (4th Cir. 2019) ("We are obligated to construe a statute to avoid constitutional problems" where "such a reading is fairly possible") (citation modified).

DOJ argues that NVRA case law is irrelevant because the NVRA provides public disclosures, while the CRA only provides disclosures to

the Attorney General. DOJ Br. 57. But invasions of privacy by the federal government are no less chilling than those wrought by private actors. *See generally All. for Retired Ams. v. Bessent*, 770 F. Supp. 3d 79, 102 (D.D.C. 2025) (noting individuals' "expectation that federal agencies will keep their records private."). Moreover, the limited case law considering records requests under the CRA acknowledged that courts retain the "power and duty to issue protective orders," *Lynd*, 306 F.2d at 230, recognizing that courts must protect sensitive voter information from disclosure under the CRA where constitutional concerns arise.

Consequently, four courts have held that DOJ is not entitled to *unredacted* records because of the danger to voters' constitutional and privacy rights. *See Warner,* 2026 WL 2018877, at *7–8; *Bellows*, 834 F. Supp. 3d at 121 n.7; *Oregon*, 828 F. Supp. 3d at 1107–08; *Weber*, 816 F. Supp. 3d at 1187–88 ("[DOJ] itself [has] acknowledged these privacy risks itself" in previous litigation).

## CONCLUSION

This Court should affirm.

Dated: September 30, 2026

Respectfully submitted,

*/s/ Jonathan Topaz .*
Jonathan Topaz
Theresa J. Lee
Sophia Lin Lakin
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

Deborah A. Jeon
Dara Johnson
AMERICAN CIVIL LIBERTIES UNION OF MARYLAND
3600 Clipper Mill Road
Suite 200
Baltimore, MD 21211
Tel. 410-889-8555
jeon@aclu-md.org
djohnson@aclu-md.org

*Attorneys for Defendants-Intervenors-Appellees Common Cause, Out for Justice, Inc., Carl Snowden, Myriam Paul, and Luis Sims*

## STATEMENT REGARDING ORAL ARGUMENT

Intervenor-Defendants-Appellees Common Cause, Out for Justice, Inc., Carl Snowden, Myriam Paul, and Luis Sims respectfully request oral argument, given the importance of this case and the legal questions at issue. For reasons explained in their opposition to DOJ's emergency motion to expedite briefing, *see* Dkt. 18-1, Intervenor-Defendants-Appellees disagree with DOJ that expedited consideration of this case is necessary or warranted and object to oral argument being scheduled on a shortened timeframe, *see* DOJ Br. 63–64.

Dated: September 30, 2026

Respectfully submitted,

/s/ *Jonathan Topaz*
Jonathan Topaz

*Attorneys for Defendants-Intervenors-Appellees Common Cause, Out for Justice, Inc., Carl Snowden, Myriam Paul, and Luis Sims*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 4,986 words. This brief further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Century Schoolbook Font.

Dated: September 30, 2026

Respectfully submitted,

/s/ *Jonathan Topaz*
Jonathan Topaz

*Attorneys for Defendants-Intervenors-Appellees Common Cause, Out for Justice, Inc., Carl Snowden, Myriam Paul, and Luis Sims*

## CERTIFICATE OF SERVICE

I certify that on September 30, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: September 30, 2026

Respectfully submitted,

/s/ *Jonathan Topaz*
Jonathan Topaz

*Attorneys for Defendants-Intervenors-Appellees Common Cause, Out for Justice, Inc., Carl Snowden, Myriam Paul, and Luis Sims*